WILLIAM MUSSELMAN ET AL. v. GEORGE STROHL.

No. 3309.

1. **Practice—Dismissal.**—Upon death of one of several plaintiffs in an action of trespass to try title, the surviving plaintiffs can not on appeal complain that the court dismissed the suit as to the deceased plaintiff. The survivors being joint tenants can prosecute their suit and the dismissal does not affect their rights. Watrous v. McGrew, 16 Texas, 506.

2. **Proof of Heirship of Persons Making Themselves Parties as Heirs of a Deceased Plaintiff.**—In trespass to try title a plaintiff dies and parties are allowed to make themselves parties plaintiff as heirs of the deceased; the heirship is put in issue by the plea of not guilty, and devolves upon the plaintiffs the burden of proving their heirship upon the trial.

3.  **Cancellation of Patent.**—A patent was indorsed at the Land Office *cancelled* by authority of a judgment in a suit in which parties offering the patent had not been made parties. *Held*, the cancellation did not affect the rights of those not parties to the suit ordering the cancellation.

4.  **Ratification.**—But such cancellation might be acquiesced in by parties not bound See facts held to raise the issue whether the cancellation had been ratified. The certificate was relocated elsewhere, etc. Correspondence was had touching the relocation, etc.

5.  **Return of Field Notes to Land Office.**—Prior to the enactment of the Revised Statutes the statute (Pasch. Dig., art. 4568) required that the field notes of surveys be returned within one year from the date of the appropriation of the land, and provided in effect that a failure to do so should forfeit the location; but it did not provide that the land should not be subject to relocation by virtue of the same certificate.

6.  **Withdrawal of Certificate from Land Office.**—The withdrawal of a land certificate returned to the Land Office with field notes made under it by an unauthorized person does not make void the location. The most that would be required in such case would be that the owner take means for its return within reasonable time after knowing of the withdrawal of the certificate.

7.  **Same.**—See facts showing withdrawal without authority and reasonable diligence in returning certificate to Land Office.

8.  **Fact Case.**—See facts discussed and held to show that the original survey of the land in litigation, made in 1860, included practically the same territory embraced in corrected field notes of the survey made in 1873. Adjoining surveys were called for and ascertained, controlling course and distance.

9.  **Verdict.**—In an action of trespass to try title the verdict found for the defendant, and fixed sufficiently the extent of the land so found. It appearing that the finding included all claimed by the plaintiffs the verdict was sufficient; finding beyond was surplusage.

10. **Judgment.**—In trespass to try title defendant pleaded not guilty. The verdict found for the defendant boundaries including more land than was claimed by the plaintiffs. It was error to enter judgment for the defendant for the land so described. The judgment should have been that plaintiff take nothing of defendant, and that defendant recover costs.

11. **Case Adhered to.**—Armstrong v. Nixon, 16 Texas, 611, adhered to, that a judgment of dismissal against a deceased plaintiff is voidable as to his heirs, and should be set aside on application of heirs by motion if made during the term, or by petition subsequent thereto in the nature of a writ of error coram nobis.

12. **Fact Case — Judgment of Dismissal Set Aside.** — At September term, 1889, defendant suggested the death of one of the plaintiffs. May 28, 1890, on motion of defendant, suit was dismissed as to the party plaintiff whose death had been suggested. On June 10, 1890, and during the term, application was made by one shown by affidavit to be the sole heir, to set aside the order dismissing the case, and to be allowed to appear in the case as plaintiff, showing merits. *Held*, error to refuse to set aside the dismissal.

APPEAL from Tarrant. Tried below before Hon. R. E. BECKHAM. The opinion states the case.

*J. F. Cooper*, for appellants.—1. Where the death of a party to a suit appears of record, until proper parties have been made further proceedings, if not null and void, will be set aside by the court. Martel v. Hernsheim, 9 Texas, 294; Bissell v. City of Lavaca, 6 Texas, 54; Mills

v. Alexander, 21 Texas, 163; Moke & Bro. v. Brackett, 28 Texas, 446; Milam County v. Robertson, 47 Texas, 233; Harrison v. McMurray, 71 Texas, 127.

2. After the issuance of patents the estate granted by the government can not be divested except by a formal conveyance or a regular proceeding. Hanrick v. Dodd, 62 Texas, 89; Howard v. McKenzie, 54 Texas, 188; Dikes v. Miller, 24 Texas, 423; Dikes v. Miller, 25 Texas Sup., 290.

3. The court erred in not giving, as requested by the plaintiffs in their second special charge, an instruction to the jury that the power of attorney offered in evidence by the defendant, from William and Birch Musselman to A. O. Smith, did not authorize Smith to cancel the Musselman patent, and that the jury should disregard said power of attorney as authority for such cancellation. Milam County v. Bateman, 54 Texas, 168; Howard v. McKenzie, 54 Texas, 188; Clark v. Courtney, 5 Pet., 319; Reese v. Medlock, 27 Texas, 121.

4. To constitute an estoppel, the act or omission must be shown to have had a direct or immediate influence upon the party claiming its benefits. Scoby v. Sweatt, 28 Texas, 731; Burleson v. Burleson, 28 Texas, 416; Love v. Barber, 17 Texas, 313.

5. The holder of a certificate can not lift and float it when the same is on land not previously appropriated. Adams v. Railway, 70 Texas, 267; Pasch. Dig., art. 4574; Rev. Stats., art. 3898.

6. All lands located by entry or application must be surveyed within twelve months from the date of entry or the same will be null and void; and the relocation of the land by the same certificate, whether by entry or survey, is contrary to public policy. Pasch. Dig., arts. 4568, 4573; Rev. Stats., art. 3902.

7. The court erred in refusing to submit to the jury the question of abandonment of the A. F. Albright survey by the owners, as requested by plaintiffs in special charge number 10. [See opinion.] Pasch. Dig., art. 7096; Atkinson v. Ward, 61 Texas, 387; Poor v Boyce, 12 Texas, 446; Hollingsworth v. Holshousen, 17 Texas, 49; Johnson v. Eldridge, 49 Texas, 521; Lewis v. Durst, 10 Texas, 417; Williams v. Craig, 10 Texas, 437; House v. Talbot, 51 Texas, 467.

8. Where a case has been dismissed after the death of the plaintiff, the court upon motion will, at any time within the time allowed for a bill of review, reinstate the cause. Armstrong v. Nixon, 16 Texas, 610; Moke & Bro. v. Brackett, 28 Texas, 446; Harrison v. McMurray, 71 Texas, 127; Bissell v. City of Lavaca, 6 Texas, 54; Milam County v. Robertson, 47 Texas, 233.

*F. B. Sexton, J. Y. Hogsett,* and *S. P. Greene,* for appellee.—1. The plaintiffs failed to show title in themselves to any part of the land sued for, and the verdict could not under the evidence have been otherwise

than for the defendant. Clark v. Hills, 67 Texas, 148; Bridges v. Cundiff, 45 Texas, 443.

2. The plaintiffs, Sarah Musselman et al., who had made themselves parties, claiming to be heirs of Birch Musselman and as tenants in common with William Musselman or his heirs, could prosecute the suit alone without being joined by the other alleged cotenants. The dropping of William Musselman from the suit in no manner prejudiced the rights of the remaining plaintiffs to recover if otherwise entitled to a recovery. Rev. Stats., art. 1250; Pilcher v. Kirk, 60 Texas, 162; Sowers v. Peterson, 59 Texas, 217; Watrous v. McGrew, 16 Texas, 511; Gunter v. Jarvis, 25 Texas, 581, 582; Dunman v. Coleman, 59 Texas, 199.

3. The owners of the Albright certificate had the right to have corrected field notes made of the survey if they kept within the original location, or if adverse claims had not attached that would be interfered with, and the court did not err in refusing the charges. Railway v. Thompson, 65 Texas, 191; Forbes v. Withers, 71 Texas, 302.

4. The court did not err in the charge given to the jury, qualified as it was, concerning the withdrawal of the Albright certificate from the Land Office and the diligence in the return thereof to said office. Snider v. Methvin, 60 Texas, 487.

GAINES, ASSOCIATE JUSTICE.—The counsel for appellants in his brief makes the following preliminary statement of the nature, progress, and result of this suit:

"This is an action of trespass to try title, brought by William and Birch Musselman, as plaintiffs, against George Strohl, as defendant, for the recovery of 1920 acres of land in Tarrant County in the name of Robert Musselman.

"At the January term, 1889, of the District Court the death of Birch Musselman was suggested, and at the same term of court Sarah Musselman, David Musselman, Wm. C. Musselman, and Patrick H. Musselman were made parties plaintiff as the heirs at law of Birch Musselman.

"At the September term, 1889, on the — day of December, 1889, the defendant George Strohl suggested the death of the plaintiff William Musselman, and cause was continued to make parties.

"At the May term, 1890, on the 28th day of May, the case was called for trial, and upon motion of defendant Strohl the cause was dismissed as to William Musselman and proceeded to trial as to the remaining plaintiffs, over their objection, and resulted in a verdict and judgment in favor of the defendant.

"The plaintiffs filed their motion for a new trial, and also a motion to set aside the judgment, which motions were overruled, and notice of appeal to the Supreme Court was given by plaintiffs.

"The appellant Mary V. Allen, heir at law of William Musselman, deceased, filed a motion in the case on the 10th day of June, 1890, to set aside the judgment dismissing the cause as to said William Mussel- man, and prayed to be admitted as a party plaintiff to prosecute the suit. The court overruled her motion, and she also gave notice of an appeal to the Supreme Court."

The plaintiffs and Mary V. Allen perfected their appeal to this court.

The appellee accepts the foregoing statement as correct, with the addendum that the cause was continued at the January term, 1890, to make parties. In another part of his brief, however, he claims that the plaintiffs did not object to the dismissal of the suit as to their de- ceased coplaintiff, but voluntarily went to trial. The recitals in the judgment support this claim, and we find no bill of exceptions to the action of the court in that particular.

The dismissal of the case as to the heirs of William Musselman is complained of in the first assignment of error filed by the appellants, the heirs of Birch Musselman. The question presented by this assign- ment was decided adversely to these appellants in the case of Watrous v. McGrew, 16 Texas, 506. In that opinion it was said: "We have here- tofore decided that one tenant in common may maintain an action of trespass to try title against a stranger. Croft v. Rains, 10 Texas, 520. We are of opinion, therefore, that the action did not abate by the death of one of the plaintiffs, and that there was no necessity to make the heirs of the deceased parties to the suit. The right of action of the survivors was not affected by the death of their coplaintiff." In that case the defendants moved to dismiss the suit on account of the failure to make the representatives of the deceased plaintiff parties, and ex- cepted to the court's action in overruling the motion; but the plaintiffs below, who were appellants in the Supreme Court, went voluntarily to trial. What the action of the court should have been had they ob- jected to the dismissal of the cause as to their coplaintiff and to going to trial until his heirs were made parties, it was not necessary to de- cide. If the plaintiffs made such objection in the present case, it is not disclosed by the record.

Having disposed of this question, we will consider a preliminary proposition submitted on behalf of appellee, which he contends is de- cisive of this appeal. The contention is, that the plaintiffs who had made themselves parties as the heirs of Birch Musselman wholly failed to prove that they were such heirs, and that for that reason the judg- ment was necessarily against the plaintiffs, and that any errors com- mitted by the court during the progress of the trial could not have prejudiced appellants. There was evidence tending to show that Will- iam and Birch Musselman were the heirs of Robert Musselman; but so far as we can see, there was no proof whatever that the persons who made themselves plaintiffs as the heirs of Birch Musselman were in

fact such. The point was directly made in appellee's brief that there were none, and appellant has not controverted the statement.

This brings us to the second question in the case. Was such proof necessary? The statute provides, in effect, that when a plaintiff dies and the cause of action survives, his heirs (there being no administration and no necessity therefor) may appear, and may, upon suggestion of the death being made in open court, make themselves parties plaintiff. Rev. Stats., art. 1246. It is held, that in such a case the suggestion of death may be controverted; and it may be that if the defendant is not satisfied that the proposed new parties are the heirs of the deceased plaintiff, he would have the right to contest the fact upon the application to appear and to be made parties to the suit. If such contest were made, and if it were decided adversely to the defendants, there would be plausibility in the argument that he was concluded by the determination of the question, and that proof of the heirship upon the trial was unnecessary. But it would seem that he should not be held concluded unless he should have the right of trial by the jury upon his contest. Parties have not this right upon ordinary motions. But however that may be, we are of opinion that if the parties are allowed to appear and prosecute the suit upon the mere allegation that they are the heirs of the party whose death has been suggested, this allegation is put in issue in actions of trespass to try title by the plea of not guilty, and that it is incumbent upon them to prove the fact upon the trial of the cause. Having become parties upon mere allegation that they are heirs, and without any determination by the court of that question, they should be held to occupy the same position in regard to the proof as if they had brought action in the first instance. We conclude, therefore, that in order for the plaintiffs to recover, it was necessary for them to prove their heirship as alleged. It appears, therefore, that in no event could a verdict have been properly returned for the plaintiffs, and that for that reason we would be justified in declining to consider any assignments of error in relation to any action of the court during the progress of the trial. But the question, we think, is one of first impression in this court, and it was not raised in the court below. If the court had been requested to direct the jury to return a verdict for the defendant upon this ground, the plaintiffs may have supplied the omission, or have asked and obtained permission to withdraw their announcement on account of surprise. We feel reluctant, therefore, to affirm the judgment upon this narrow ground, and think it should not be done if any material error was committed by the court during the progress of the cause.

In order to understand the questions which affect the merits of the respective titles of the parties, it is necessary to make a statement of their respective claims. The defendant claims under a survey made upon a certificate granted to Alexander Albright. This is the older

survey. The file was originally made in 1858, and was renewed November 8, 1859. The land was surveyed May 3, 1860, and on June 4 of the same year the field notes were filed in the General Land Office. Corrected field notes were made out and filed in October, 1872. The field notes were again corrected on July 10, 1875, and were filed in the Land Office on the 23d day of that month. The survey was patented to Matthew Cartwright as assignee on the day last named. Matthew Cartwright was dead at the date of the patent, and the defendant has the title of his heirs.

The plaintiffs claimed as the heirs of Birch Musselman, who was shown to be an heir of Robert Musselman, in whose name a patent issued to the land sued for, on the 20th of August, 1873.

The defendant sought to show that the Musselman patent had been cancelled. In order to maintain his contention in that respect, he introduced in evidence a certified copy of the patent, indorsed by the chief clerk of the Land Office as cancelled in accordance with a decree of the District Court of Tarrant County. The decree was not offered in evidence, but it is conceded that the Musselman heirs were not parties to the decree and are not bound by it. But the defendant introduced also a power of attorney from William and Birch Musselman to A. O. Smith, dated 9th of July, 1875, of which the granting clause is as follows: "Do hereby authorize and empower A. O. Smith, our agent and attorney in fact, to try and have such land that belongs to said Robert Musselman patented by the State of Texas, and to control the same." He also introduced in evidence letters from Smith to the Commissioner of the General Land Office, as follows: One dated June 16, 1885, requesting him to issue patent to a survey, the field notes of which were sent him on 12th of May; one of September 7, 1885, requesting the Commissioner to advise him when patents were issued to the heirs of Robert Musselman "for Tarrant and Jack lands;" and two, dated respectively December 15, 1885, and January 12, 1886, in relation to the same subject matter. The correspondence indicates that Smith lived at Louisville, in the State of Kentucky, in which city William Musselman also resided. The defendant also showed that Smith, in May, 1885, filed the certificate by virtue of which the land in controversy had been patented to the heirs of Musselman, upon a strip of land containing about 112 acres, which lies immediately south of the Albright survey, as that survey is claimed to be by the defendant. The field notes of the survey of 112 acres were returned to the Land Office on the 12th of May, 1885, and it is doubtless the survey referred to in the Smith letter of June 16. The deposition of William Musselman, one of the original plaintiffs, was read in evidence. He testified, that his "agent A. O. Smith, examining the Land Office of Texas, learned from the Commissioner of said Land Office that the land in dispute in

this case in Tarrant County, Texas, had also been donated to Robert Musselman for his services."

The heirs of Musselman not having been parties to the decree by virtue of which the Commissioner of the Land Office undertook to cancel the patent to them, that decree was a nullity and incapable of ratification. But the Musselman survey being in conflict with the Albright, which was older, the Commissioner had the power to cancel the patent upon the application of the owners of the Musselman certificate. Although he acted without authority, his act was capable of ratification or adoption. The owners had a right to acquiesce in the unauthorized· act of the Commissioner, and to withdraw the certificate and to locate it upon other land. If, therefore, Smith was authorized by them to relocate the certificate upon the survey of 112 acres surveyed for them in May, 1885, we are of opinion that such action was a ratification of the act of the Commissioner in cancelling the patent, and that it precluded a recovery by them in this case. The court charged the jury, that the cancellation of the patent was unauthorized, and that the plaintiffs were not bound by it unless they had ratified and acquiesced in such cancellation. The court also charged the jury, that the power of attorney from the Musselmans to Smith did not authorize Smith to ratify the cancellation of the patent, but that it was a circumstance to be look to in determining whether or not they had ratified or acquiesced in the cancellation. These instructions contained a clear and full presentation of the law of the case as applicable to the issue of the cancellation of the patent, and therefore it was not error to refuse additional instructions upon the question, however correct they may have been.

But it is complained that the court's charge upon the issue was erroneous, because there was no evidence of any ratification or acquiescence on part of plaintiffs' ancestors. We think there was sufficient evidence to authorize the submission of the issue to the jury. The evidence shows, that Smith relocated the certificate in May, 1885; he wrote in reference to it in the next month; that in July he received the power of attorney, and that during the remainder of the year 1885, and in January, 1886, he continued to urge the issuing of a patent to the new survey. His letters except one are dated at Louisville, Kentucky, and in that one he requests that the answer be directed to that place. William Musselman, and perhaps Birch Musselman, lived in that city, and we think there was evidence sufficient to warrant the jury in finding that those persons authorized Smith to relocate the certificate, with the knowledge that the patent had been cancelled. The power of attorney was on file in the General Land Office, and was probably given to Smith after his agency was created, for the purpose of enabling him to control the files in that office.

The plaintiffs objected to the admission in evidence of the letters of Smith, their power of attorney, and the evidence of the file upon the 112-acre survey, and assign the court's ruling as error. What has already been said is sufficient to show that, in our opinion, the evidence was relevant.

We will now proceed to the consideration of the questions raised by plaintiffs affecting the validity of the defendant's title. They insisted in the court below, and here insist, that the patent to Cartwright, assignee of Albright, was void: (1) because the field notes were not returned to the General Land Office within twelve months from the time of the file; and (2) because the Albright certificate was withdrawn from that office before the patent issued.

The law in force at the time the file was made required the field notes to be returned within one year from the date of the appropriation of the land, and provided, in effect, that a failure to do so should forfeit the location. Pasch. Dig., art. 4568. But it did not provide that the land should not be subject to relocation by virtue of the same certificate. That provision is contained in the Revised Statutes, but was not embodied in the former law. Rev. Stats., art. 3902. The former statute merely made the location void, and provided that the land should be subject to location by any valid certificate. Pasch. Dig., supra. The file of the Albright certificate having been renewed, and the land having been surveyed and the field notes returned to the Land Office within twelve months from the date of such renewal, the land was lawfully appropriated by such relocation. Whether after the issue of the patent an irregularity of this character could be inquired into, we need not determine. The facts in relation to the withdrawal of the certificate from the Land Office are, that one Buford was concerned in its location for Matthew Cartwright, and that after the death of Cartwright he withdrew the certificate without authority from any one having a right in the land. He testified himself, that he acted without authority, and the fact is not disputed. Matthew Cartwright being dead, the authority could have been given by his heirs only, and there is no evidence that such authority was ever given. J. P. Smith testified, that he informed Leonidas Cartwright, one of the heirs, that the certificate had been withdrawn by Buford. He thought this was in 1873, before the Musselman patent issued; but also testified, that it was at a time when Leonidas Cartwright caused the transfers to his father to be recorded. The evidence shows that this was on June 11, 1874.

The withdrawal of the certificate by one not authorized by the owner does not make void the location. Snider v. Methvin, 60 Texas, 487. The most that can be required of the owner in such case is, that when informed of the withdrawal he shall use reasonable diligence to return it. The court instructed the jury, that the withdrawal of the certificate would not affect the rights of the defendant "if the jury should

further believe that said owners upon being informed of such withdrawal used reasonable and proper diligence to secure the return of said certificate to the General Land Office.  If, however, the heirs of Cartwright failed to exercise reasonable diligence to return said certificate to the General Land Office and to assert claim to the land located and surveyed by virtue of said certificate, that then and in that event said land became subject to location; and if you so find you are instructed that the title exhibited by plaintiffs entitles them to recover the land in controversy, and you should so find unless under the instructions before given you should find that said Musselmans had assented to or acquiesced in the cancellation of said patent.''  This charge very fully presented the law of the case upon this issue in its most favorable aspect for the plaintiffs, and rendered any additional instructions on their behalf upon the point unnecessary.  Therefore, it was not error to refuse the special instructions requested by them with reference to the same matter.  But there was no evidence to show that Leonidas Cartwright knew of the withdrawal of the Albright certificate before that under which the plaintiffs claim was filed upon the land, and it may be gravely doubted whether in such a case any right was acquired by virtue of that file.

Smith informed Cartwright of the withdrawal of the certificate in Fort Worth.  Buford lived at Sulphur Springs, but was at the time ''out west'' surveying land.  Cartwright's residence was in San Augustine.  The jury were authorized to conclude that the information was not conveyed until June, 1874.  The certificate was returned in December of that year.  The jury may have based their verdict upon the finding that the Musselmans assented to or acquiesced in the cancellation of their patent; but if they did find that Cartwright used proper diligence in procuring and returning the certificate, we can not say that such finding is without evidence to support it.

But the appellants also complain that ''the court erred in not instructing the jury as requested by the plaintiffs in their eleventh and twelfth special charges, to the effect that no relocation under said Albright certificate, sufficient to appropriate other land than that embraced in the original survey, made on the 3d day of May, 1860, has been shown; and that the corrected field notes of the said Albright survey, made the 9th of October, 1872, filed in the General Land Office on the 23d of October, 1872, could not be made to include any land which was not embraced in the original survey, made on the 3d day of May, 1860, and therefore, in determining the question of conflict between the Musselman 1920-acre survey and the Albright, the jury are directed to consider such conflict as arises by reason of the conflict of the Musselman survey with the said original survey of the Albright, and that such land as is included in the Musselman patent, dated 20th August, 1873,

that is not in conflict with the original Albright survey, belongs to the Musselman survey."

The plaintiffs do not claim that the original file, which was made in 1858 and was renewed in the next year, did not include all the land embraced in the field notes of 1872, which was covered by the Musselman patent, but that the field notes of 1872 should be restricted to the land embraced in the field notes of the survey made in 1860. The contention seems to be, that the south line of the Musselman includes land not embraced in the survey of 1860, but which is embraced in that of 1872. Both of the two last surveys called for an offset in the south boundary (that of 1860 in calling for the offset makes the line 66 varas), thus, "thence south 66 varas," while that of 1872 gives the length of the offset as being 303 varas. But the field notes of all the Albright surveys call to begin at the Hibbins northwest corner—the west line of which survey is 1900 varas long—and each of them calls for the southeast corner of the survey at a point south of Hibbins' southwest corner. The last line in each is coincident for nearly the whole of the distance with Hibbins' west line, but is longer than that line—the first (1860) by 66 varas, the second (1872) by 303 varas, and the last (under which the patent issued) by only 34 varas. Besides, the first two call for the southwest corner as being on the west line of the San Antonio & Mexican Gulf Railway strip, while the call for the last line of the last survey calls to run north and to pass Hibbins' southwest corner. It is evident, therefore, that all of these surveys place their respective south boundaries south of a line extended west from the corner last named. But the field notes of the patent under which the plaintiffs claim call to begin at the southwest corner of the Hibbins survey, and to close by a line running east to that corner. Therefore we must conclude that their patent covers no land on the south that was not embraced in each of the surveys which were made upon the Albright certificate, unless it should be held that one of them should be established by the calls for the connecting surveys on the north and by running the course and distance called for, without regard to the calls for the Hibbins and other surveys adjacent to it. That question, we think, was settled by the verdict of the jury adversely to appellants, as we shall hereafter see. But in any aspect of the case, the charges should have been refused; because if the call for the Hibbins in the original field notes of 1860 were correct, there is no reason why substantially the same calls in the corrected field notes were not correct also.

There are other assignments complaining of the refusal of the court to give instructions requested and of the instructions given, but we may dispose of all of them by announcing one proposition, namely, that the charge given by the court was admirable for its clearness, brevity, correctness, and completeness. It was neither deficient nor incorrect.

It is also complained that the verdict of the jury is contrary to the evidence, because the testimony showed that the rights of the Cartwright heirs were forfeited by the failure to exercise diligence in returning the Albright certificate to the Land Office after being informed of its withdrawal by Buford. But we think the verdict in that particular was not without evidence to support it.

It is also insisted that the verdict is against the evidence in finding that the Albright field notes covered all the land included in the Musselman patent, and it is especially insisted that the jury should have disregarded the calls in the Albright field notes for the corners of the Hibbins survey. Any extended discussion of the question would serve no useful purpose. There was some conflict in the evidence, but the verdict we think is supported by the weight of the testimony. The field notes of all the Albright surveys call for the northwest corner of the Hibbins. There was evidence showing that it was a marked corner. However the field notes may have been corrected as to other calls, in all of them the calls for the Hibbins survey are substantially the same. There was evidence to warrant the jury in concluding that the boundaries of the Albright survey extended to all the adjacent surveys called for in its field notes, and that the calls for course and distance should be disregarded when in conflict with calls for other surveys.

The verdict of the jury is as follows: "We, the jury, find for the defendant. Beginning at a rock in the northwest corner of the John Hibbins survey; thence east," etc. [giving the field notes substantially as found in the Albright patent]. The appellants claim that this verdict is not responsive to the issues submitted to the jury. The verdict, if it is to be treated as a finding for the defendant for the land described by the field notes therein set out, finds for the defendant more land than is claimed in the petition. The defendant pleaded a general denial and not guilty. Such a verdict was not authorized by the pleadings. But is it too narrow? Is it deficient by reason of its failure to find for the one party or the other all the land in controversy? We may consider it a verdict for defendant for the land described in the field notes only. If so restricted, and if the land so described does not embrace all that claimed in the petition, then it should be held bad, because it does not determine the issue of title between the parties as to the land not so embraced. Moore v. Moore, 67 Texas, 293. But a careful comparison of the field notes found in the verdict with those set forth in the plaintiffs' petition satisfies us that the former embrace all the land described by the latter. The south line of the latter runs west from the Hibbins southwest corner; that of the former runs west from a point thirty-four varas south of that corner. Upon the east and north there can be no question. The west boundary line of the Musselman field notes very nearly approach and may reach the most eastern of the west boundary line of the Albright as found in the verdict, which line

is designated by the call, "thence south at 854 varas to the southeast corner of said Askew survey." The Musselman survey does not extend beyond this line, and therefore does not include any land outside of the Albright on the west. It follows that the verdict determines the whole matter in dispute, and is, we think, good as a general finding for the defendant. It serves to show that in the opinion of the jury the defendant's lines are located where he claimed them to be. But in so far as it finds for him for any land not in controversy in this suit, if such was the intent of the jury, it should be treated as surplusage.

By the judgment, however, the defendant recovers the land described in the verdict. This is erroneous. It should have been simply a judgment that the plaintiff take nothing by his suit, and that the defendant go hence and recover his costs.

The remarks of the court made during the examination of a witness, to which exception was taken, were proper. The witness was not interrogated as to facts within his own knowledge, but in reference to conclusions to be drawn from a map which had been exhibited before the jury. It is a proper exercise of the court's discretion to check such an examination, with or without objection from the opposing side.

We find no error in the proceedings in so far as the appellants the heirs of Birch Musselman are concerned, except the error in the judgment. This should have been called to the attention of the court below by a motion to reform; but it was not done. The judgment will be reformed in this court.

This brings us to the questions presented by the assignments of error filed by appellant Mary V. Allen. After the judgment she filed a motion to set aside the order of dismissal as to the original plaintiff William Musselman, whose death had been suggested, alleging that she resided in the State of Kentucky; that she was his only heir; that there was no administration on his estate and no necessity therefor; that she believed she had a good cause of action, and that if she was forced to an original action her title was barred by limitation. The motion was supported by an affidavit of her attorney that the allegations contained were to the best of his information and belief true. The court overruled the motion, and that action is assigned as error. We have held, that the other appellants could not justly complain of the dismissal of the suit as to William Musselman; nor can they complain of the refusal of the court to set aside the judgment against them on that ground. The action of the court in that particular in no manner prejudiced their rights. But the case of Mary V. Allen stands upon a different footing. The judgment dismissing the cause as to William Musselman, though not to be avoided by his coplaintiffs, was voidable as to his heirs. As to them, it stands like any other judgment rendered against a dead man, and is subject to be set aside in the court which rendered it, by a motion during the term or by a petition subsequent thereto in the nature of

a writ of error coram nobis.   Armstrong v. Nixon, 16 Texas, 611.   We think that the affidavit was sufficient prima facie to support the motion.

The judgment of dismissal as to William Musselman will be set aside, and the cause remanded as to Mary V. Allen.   As to the other appellants, the judgment will be here reformed and affirmed.   Appellee will recover one-half of the costs of this appeal of the appellants, the heirs of Birch Musselman, and Mary V. Allen will recover the other of him.

*Reversed and remanded in part and rendered in part.*

Delivered February 19, 1892.