### No. 11,111.

THE STATE OF LOUISIANA VS. THE BOSTON CLUB AND PICKWICK CLUB.

The defendants are not carrying on business, nor are they engaged in trade, within the meaning of the statutes.

The statutes requiring licenses from those who " sell, give or otherwise dispose " of alcoholic drinks are within constitutional limitations.

Without regard to trade or business, or to the fact that the proceeds are not realized with a view to profit or for a livelihood, incorporated institutions engaged in selling intoxicating liquors to their members owe a license under the paragraph of Sec. 11, of the license tax law, designating "sales, gifts or other disposition" as subject to a license.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

*Edwin H. McCaleb* for Plaintiff and Appellant:

1. Defendants in this rule are liable for the license tax imposed by Sec. 11 of Act 101 of 1886, and Sec. 11 of Act 150 of 1890, for "selling or otherwise disposing" of spirits, wines, alcoholic and malt liquors.

2. Social clubs organized as corporations under the general laws, authorizing the formations of corporations "for literary, scientific and charitable purposes," are liable to a license tax for selling liquors to their members and guests. American State Reports, pp. 35 to 49, inclusive. Decisions to the contrary are here reviewed and shown to be unsound and fallacious. See also State vs. Neis, 108 N. C. 787; State vs. Essex Club, 53 N. J. L. 99; State vs. Easton Social, etc., Club, 73 Md. 97; State vs. Horacek, 41 Kansas, 97; People vs. Soulé 47 Mich. 250; People vs. Andrews, 115 N. Y. 427; State vs. Lockyear, 95 N. C. 633; Chesapeake Club vs. State, 63 Md. 446; Martin vs. State, 59 Ala. 34; Marmont vs. State, 48 Ind. 21.

3. Defendants are pursuing the business of retail liquor dealers, and under Art. 206 of the Constitution, the statutes imposing a license upon them must be enforced. They can not escape, because carrying on a business not authorized by their charters. Salt Lake City vs Hollister, 118 U. S., pp. 259, 260.

4. The liquor sold, is the property of the corporation, from which the members can buy. The mode of furnishing liquors to the members and invited guests contains all the elements of a sale. R. C. C., Arts. 435, 436, 437, 438 and 2439.

5. These clubs are compelled to take out a liquor dealer's license from the United States, under its revenue laws. United States vs. Wittig, 2 Low. C. C. 466; Secs. 3242 and 3234, R. S. U. S. No good reason can exist to exempt them from payment of State licenses.

6. Social clubs are also liable for the payment of a license tax on billiard and pool tables. Burroughs on Taxation; p. 152; Germania vs. State, 7 Md. 1; Sears vs. West, 1 Murphy (N. C.), 291.

*Howe & Prentiss* for the Boston Club, Defendant and Appellee:

1. The Constitution, Art. 206, contemplates license taxes on business, etc., and for revenue only.

2. The statutes levy license taxes only on business, etc.

3. The Boston Club is incorporated, *bona fide*, to establish and maintain a library and reading rooms, and the regulation of social intercourse among its members—and certain non-resident guests, who are members *pro tem.* It is not in the business of keeping a bar room, a restaurant, or a billiard saloon; and the furnishing of refreshments, cigars and billiards to such members only is shown to be practically only a sort of co-operative housekeeping by a large instead of a small number of people. The club house is more strictly private than a private dwelling.

4. The distribution of refreshments and cigars among such members of a club is not a sale in any fair sense of the word. It has no element of bargain. It is not done for profit or livelihood. It is a merely equitable plan to prevent the loss which would otherwise occur from falling on those members who do not partake of such refreshments or cigars. State vs. Columbia Club, 14 S. E. 290; 8 Q. B. 373; 55 Md. 566; 63 Md. 460; 102 Mass. 147; 137 Id. 564; 11 Lea, 542; 25 Pac. Rep. 1042; 12 S. E. 963.

5. The comparative expense of the *maintenance* of the library and reading rooms and the refreshments not important.

6. No license has ever been required by the United States.

7. The club is not in the business of keeping a billiard room. Acts of 1890, pp. 205-6.

*Farrar, Jona s & Kruttschnitt* for the Pickwick Club, Defendant and Appellee:

1. The Constitution of the State of Louisiana, Art. 206, provides that the General Assembly may levy a license tax * * * " to be collected from the persons pursuing the several trades, professions, businesses, vocations or callings. All persons, associations of persons or corporations pursuing any trade, profession, business or calling, may be rendered liable to such tax," etc.

2. The Legislature of the State of Louisiana has levied all licenses which it is authorized to levy by the Constitution—*i. e.*, licenses upon all "businesses," and it could not levy any others.

3. The functions performed by a *bona fide* social club do not constitute a trade, profession, vocation, business or calling, either in ordinary parlance or according to general dictionaries, or according to law dictionaries. See Worcester's Dictionary, *verbo* " Business;" Anderson's Law Dictionary, *verbo* " Business," and following authorities: Moore vs. The State, 16 Alabama, 413; 52 Id. 21; 71 Id. 62; 28 New Jersey Law, 545; 23 New York, 244.

4. The Louisiana Legislature recognizes the distinction between social clubs and business corporations, and has provided for their incorporation by separate acts. See Act No. 112 of 1882, and Act No. 36 of 1888.

*P. E. Edrington* and *H. L. Dufour, amici curiæ,* on the same side.

The opinion of the court was delivered by

BREAUX, J. The State prosecutes this rule against the clubs above named for the payment of license taxes for conducting the business of retail liquor dealers and keeping billiard and pool tables and a restaurant.

By agreement the two cases were consolidated.

The defendants, incorporated institutions under the laws of the State, pleaded a general denial; also a special denial that they, during any of the years named in plaintiff's rule, pursued any trade, profession, business or calling, and in a special plea in their answer they

alleged that Art. 206 of the Constitution limits the power of the General Assembly, and that any legislation levying such a license tax upon others than those pursuing trades, professions, business and calling is unconstitutional.

It is proven that the Pickwick Club is a social club and composed of members who have no proprietary interest in the assets of the club.

That it provides a reading room, restaurant, bar room, billiard and sitting rooms for its members.

That the expenses of the club are defrayed by annual dues of $100 for each member, and by payment made by the members for food and drinks.

That the guests pay for drinks, or the introducer pays.

That the prices are about the same as those in the bar rooms of the city.

That small sums were expended to make additions to the library, and about $400 per annum are spent in papers and magazines.

It is also proven that the club is open to members, their families and guests; the guests are limited to three at a time for each member.

The agreed statement of facts shows that no profits have been realized; that the operations of the club have resulted in a loss over and above its income from all sources; except that for the year ending April 1, 1892, the loss was about $7000 less than the total income, including members' dues, and that the sums received were expended in increasing the convenience afforded to members.

The object of the other defendant, the Boston Club, to all intents and purposes, is the same.

There is but little difference between the charters of these clubs.

The proof establishes that profit is not contemplated by the sales of liquors and other refreshments, and that the defendant institutions are of a high social standing. Plaintiff claims licenses from the defendants for the years 1888, 1889, 1890 and 1891, with interest and attorney's fee, under the statutes which provides that for every business or places where liquors and other refreshments are sold, directly or indirectly, an annual license graduated on gross receipts from sales shall be paid, and that no establishment selling or giving away, or otherwise disposing of, any spirits shall pay less than the minimum amounts fixed in the statutes.

An examination of the different acts discloses that in 1871 the Legislature classed clubs in which spirituous liquors were sold, used or supplied to members or visitors under the head of "persons, trades, professions and occupations subject to taxation," and imposed upon them a license tax of $250 per annum.

The word "club" is not in the revenue act of 1880.

A license was imposed, in that act, on "all places" and "establishments" where liquor is sold or given away.

The act of 1886 upon the subject is the same, except that restaurants are not named. The Legislature retained the license on clubs distributing liquors and on the *business* of "restaurants."

This act and those subsequent contain an exemption not in prior acts.

"No license shall be charged for selling refreshments for charitable or religious purposes."

Corporations are distinct from all persons who compose them.

The General Assembly has by separate enactment authorized the incorporation of societies for literary and other similar purposes, and in some respects the law maintains a difference between them and corporations for the profit of its members: in other words, business corporations, but there is no difference between them as to collective entity. The rights of each are independent from the individual shareholders.

The defendants, to the extent that they have for purpose to provide for the social and intellectual entertainment of their members, are exempt.

In order to support their contention that they are not indebted at all for a license, they allege that they are not engaged in trade, and do not follow a business. The definition of business by the lexicographers is sufficiently broad and comprehensive to embrace every employment or occupation, and all matters that engage a person's attention, or require his care without the least regard to trade or business.

The meaning of the legislators as expressed in the statutes is not as extensive. Business, in a legislative sense, is that which occupies the time, attention and labor of men for purposes of livelihood, or for profit. A calling for the purpose of a livelihood,

We will follow the latter meaning in interpreting the statutes relating to license tax.

The defendants are not money corporations in a business sense, nor are they business corporations.

All subjects of license designated in the license acts have reference to business, except liquors.

There is a license required for the business of a hotel, of a theatre, of billiard tables and other occupations.

The defendants may think it sufficient to answer that the same is true for every business of bar room, cabaret and coffee house. A position which would be correct, if legislation with reference to alcoholic drinks were not exceptional.

The section 11 must be taken as a whole.

It includes all places and establishments in which liquor is distributed.

The limitation of the Constitution pleaded and argued does not restrict the General Assembly so as to prevent the collection of a liquor license as required by the statute.

The Legislature has the power to prohibit as well as the power to license the sale of liquors.

It has complete control of the subject. The affirmative prescription of the Constitution authorizing legislation with reference to a license tax, it has been decided, is not a limitation or restriction on the law-making power.

The judiciary can arrest the execution of a statute when it conflicts with the Constitution. It is for those who question the validity of a law to show that it is forbidden.

It was stated in argument by defendants' counsel that these social clubs are more private than the average dwelling.

That fact does not relieve them from the payment of a license. In reference to privacy they will be, under the law, as secure from intrusion as they were prior to the payment of a license.

The payment of a license does not have the effect of making them public.

Nor is the co-operation feature urged (if there be co-operation in carrying on the affairs of a club), a good ground of defence sustainable against the plain provision of the law.

The corporation furnishes its members with things they enjoy in common, such as commodious reading rooms, books, newspapers, at an assessed value per annum.

The drinks can not be enjoyed in common with all the members of the club.

Each member pays for that which he receives.

Even if it be not a sale it is included within the terms of the statute, and can not escape the application resulting when any spirits, wines, alcohol or malt liquors are " given away or otherwise disposed of."

The question whether or not clubs furnishing refreshments to their members, for a consideration, are engaged in selling and in business that requires a license, is one of first impression in this State. It has led to many and conflicting decisions in other States.

Cases arose when the club was an association not incorporated, and the courts decided that there was no sale.

The case of Groff vs. Evans, Q. B. Div. 375, upon the subject, is referred to as leading.

The manager of the Grosvenor Club, an association organized in good faith, was prosecuted for selling liquor without a license, under the English licensing act prohibiting the retail of any intoxicating liquor without a license.

He interposed the defence that he transferred to the members, as they required, for a money consideration.

That each member being a part owner, he (the member) could not be the seller and buyer of his own property.

The funds of the club received from the members for liquor were used in buying other liquors and other refreshments which were distributed to other members at fixed prices.

The court maintained the defence and decided that the members were co-owners, and that the transfer of the property was not a sale within the meaning of the section.

The reasoning which led to the conclusion has been criticised, and has not met with general approval.

The infinitesimal interest of the member of a large unincorporated association in the drink he orders does not make him a " tenant in common " with his co-members; and the delivery for a consideration not a sale.

This decision has, nevertheless, been followed in several jurisdictions, namely: in the cases of Commonwealth vs. Pomphret, 137 Massachusetts, p. 567; Commonwealth vs. Smith, 102 Massachusetts, p. 147; Seim vs. State, 5 Md. 566. " The club is not required to pay a license:" it was not a sale. Piedmont Club vs. Commonwealth, 12 South-Eastern Reporter, 963; State ex rel. Columbia Club vs. Mr. Master Mayor, 14 South-Eastern Reporter.

The better opinion seems to be that, whether incorporated or not, in both cases, the property passes to the individual member, and the money paid becomes the property of the club. This was the conclusion reached in a number of cases.

In State vs. Neis, 108 North Carolina, 787, the court held that the member of the association did not receive the identical liquor which belonged to himself; that it belonged mostly to others, in which he had a minute individual interest; that for his money he received in exchange liquor of others as well as of himself, and converted it to his sole and separate use; that it was a sale. The court affirmed the prior decision of State vs. Lockyear, 95 North Carolina.

In Martin vs. State, 59 Ala., the club was incorporated; it purchased liquors and sold to its members. The money received was deposited in the common fund and was spent to replenish the stock of liquors for the use of the club.

The court held that the furnishing of drinks to members for a consideration is a sale.

A similar conclusion prevailed, as to sales, in the well considered case of People vs. Soule, 74 Mich. 255.

The following decisions are to the same effect: State vs. Easton Club, 73 Md. 102; Chesapeake Club vs. Maryland, 63 Maryland, 446; New York vs. Andrew, 427; United States vs. Wittig & Lowell, 466.

The weight of authorities impels the assent to the proposition that they are sales.

Conceding them to be sales, considering the statute as a whole, we conclude that it is not the intention to require a license of social clubs as being in business or trade.

An indispensable criterion of business is that profit is intended.

The Supreme Court of Tennessee, of Virginia, of Montana and of South Carolina have decided that the operations of clubs in supplying their members with food and liquor do not constitute a business within the meaning of the statutes of their respective States.

But intoxicating liquors are specially designated, singled out, excepted.

They are subjected to the license tax without reference to any business in which the party may or may not be engaged.

The history of legislation upon the subject, in this State, preclude the possibility of concluding that it was not the intention to tax

them in inserting a paragraph as broad and comprehensive in Section 11 of the license law.

It is not limited to a license for the business of bar room, etc., but extends to all " places " and " establishments," selling or " giving away or otherwise disposing.";

This reaches the transfer of liquors, whether by " sale," " gift or other disposition."

Under the settled jurisprudence of this court in cases appealing to its equity powers, penalties in matters of licenses are allowed from judicial demand. State of Louisiana and City of New Orleans vs. New England Mutual Insurance Co., 43 An. 733.

It is therefore ordered, adjudged and decreed that the judgment appealed from, in favor of the Pickwick Club, be reversed, avoided and annulled.

And it is now ordered, adjudged and decreed that plaintiff have judgment against the Pickwick Club for the amount of the licenses of 1888, 1889, 1890 and 1891, to-wit: Sixteen hundred dollars and 10 per cent. attorney's fee on the amount of $800 and 5 per cent. attorney's fee on the remaining $800.

It is ordered, adjudged and decreed that the judgment appealed from, in favor of the Boston Club, be reversed, avoided and annulled.

And it is now ordered, adjudged and decreed that plaintiff have judgment against the Boston Club for the amount of the licenses of 1888, 1889, 1890 and 1891, to-wit: Nine hundred dollars and 10 per cent. attorney's fee on $500 and 5 per cent. attorneys' fee on $400.

And that said amounts be secured as prayed for. The defendants to pay the costs of both courts.

Judge Fenner recuses himself, being an officer of the defendant corporation.

### On Application for Rehearing.

WATKINS, J. The following are the several grounds on which the defendants rely in support of their application—the two motions, substantially, covering the same defences—to-wit:

" 1. That the judgment and decree of this honorable court are *ultra petitionem* and are in favor of the State upon a cause of action not alleged and not before the court.

" 2. That the enumeration of persons and pursuits from and upon which license taxes may be levied, and enumerated in Art. 206 of the

Constitution of the State of Louisiana, is an exclusion of a power to levy such taxes on any other persons.

" 3. Under Art. 29 of the Constitution of the State of Louisiana, it is provided that every law enacted by the General Assembly shall embrace but one object, and that be expressed in the title, and the only object contained in the title to the acts of 1886-90, upon which plaintiff herein relies for a recovery, is the levy of a license on businesses and occupations, and on nothing else whatsoever; and if the said acts be so construed as to levy a license upon anything else than a business or occupation, they are to such extent unconstitutional, null and void, because embracing more than one object, and those objects not expressed in its title.

" 4. The fact that, in the year 1871, the Legislature of the State of Louisiana imposed a tax on club houses where spirituous liquors are used, sold or supplied to members, and that said tax has subsequently been eliminated from the legislative acts, shows the intention of the Legislature not to levy a license upon such clubs.

" 5. The proviso, at the end of the eleventh section of the acts of 1886-90, merely fixes a minimum license, which must be paid by every business establishment which either sells or gives away, or disposes of intoxicating liquors in quantities, however small. This proviso is not intended to levy a license upon a class of persons upon whom the license is not levied by the rest of the section. It must be read in connection with the rest of the section, and applies solely to *business establishments* where liquor is given away."

## I.

On the first proposition the contention of counsel is that the State claims that the defendants were *conducting*, or *carrying on*, a certain kind of *business*, and demands of them, respectively, a license therefor, under the provisions of the two hundred and sixth article of the Constitution and the revenue laws of 1886 and 1890; and that our opinion inaccurately holds that the claim is not well founded in respect to their pursuit of a business of any kind, and yet compels them to pay a license tax.

It is quite true that our opinion states that claim is made for a license for conducting a business, but that business is particularly denominated as that of retailing liquor. It then gives a definition of the term business to be, in a legislative sense, that which occupies

the time, attention and labor of man for purposes of profit or a livelihood. It then announces that neither of defendants are, in any sense, business corporations, and that all subjects of license designated in the license acts have reference to business *except the sale of liquors;* and then adds, that the license law under consideration must be taken as a whole, and that it includes all places and establishments in which liquors are distributed.

The opinion then declares that the defendants " are subject to the license tax *without reference to any business* in which they may o may not be engaged. The history of legislation upon this subject in this State precludes the possibility of concluding that it was not the intention to tax them in inserting a paragraph as broad and comprehensive as Sec. 11 of the license law. It is not limited to a license for the business of bar room, etc., but extends to all *places* and *establishments* selling or giving away, or otherwise disposing of liquor.

This reaches the *transfer* of liquors by sale " or other disposition."

Just here the question arises as to whether the relief granted the State is *ultra petitionem* or not. We are of opinion that it is not, for the reason that our opinion states that the demand of plaintiff is that the defendants pay " license taxes for conducting *the* business of *retail liquor dealers,*" and not for conducting *a* business simply. It is quite evident that the plaintiff's case is brought within the province of the license law, because of defendants being charged with retailing liquors, notwithstanding it is *not a business* within the terms of the license law, in this particular instance, it not being conducted by the defendants with a view of making a profit—giving liquor away laying them liable under the law quite as well as selling it.

This principle is well grounded in authority, as an examination of decided cases will show—the test being, that the disposition was of the *liquors,* as property of the corporation, among its members, and not that the business was conducted profitably. Hence the main question is as to right of *proprietorship* in the *liquors,* whether in the corporation or its members. In many cases the additional test is put as to the disposition being a *sale,* but with the object in view of determining the proprietorship of the goods disposed of.

The case of Commonwealth vs. Pomphret, 137 Mass. 564, is one of the most conspicuous and frequently cited cases on the subject of retailing liquors without license, and the court says:

" The Legislature has prohibited the selling, or exposing for sale, of spirituous or intoxicating liquors, but it has not undertaken to prohibit the *drinking*, or *buying* of intoxicating liquors, or the *distribution of it among persons who own it in common*. If, therefore, two or more persons unite in buying intoxicating liquors, and then *distribute it among themselves*, they do not violate the statute, and the intent with which they do it is immaterial."

And in Commonwealth vs. Smith, 102 Mass. 147, the defence was that the goods sold were *property of a club* of which the defendant was a member, which advanced a certain sum for the purchase of liquors and refreshments for the use of its members, and to whom it was issued out on checks and certificates; and the court held that "if the *liquors really belonged to the members* of the club and had been previously *purchased by them, or on their account*, or *some person other than the defendant*, and if he merely kept the liquors for them, and *to be divided among them* according to a previously arranged system, these facts would not justify the jury in finding against the defendant."

It was on this principle that the clubs therein involved were held not liable—they having, at time of distribution, *no right of proprietorship in the goods* disposed of, same being exclusive property of the members among whom the distribution was made.

Likewise the court held a club not liable in Groff vs. Evans, 8 Q. B. D. 373, the court basing its opinion " on the ground that there was no transfer of the general or absolute property, but a transfer of a special interest, as *all the members of the club were owners in common*," and held that "the *furnishing* of liquors to a member was not a sale within the meaning of the English Licensing Act."

Stein vs. State, 55 Md. 566, was decided on the same ground, and there are some other cases to the same effect.

But in Reckart vs. People, 79 Ill. 85, the court say: " The proposition is absurd, that a ticket holder really owned the liquors with which the bar is stocked, as evidently the liquors belong to the company as partnership stock, and the company would have no more rightful authority to sell to the individual members or partners at retail without a license than a mere stranger would have;" but they say: "on the contrary, it has been repeatedly held that the delivering by the club or society, through its agents, of (liquor) which was common property of the society, to a member of the society, upon credit

or for cash, and which thereby became the separate property of the member, was a sale within the meaning of the licensing statutes."

To the same effect are the following cases: Marmont vs. State, 48 Ind. 21; State vs. Mercer, 32 Iowa 405; Martin vs. State, 59 Ala. 34.

In People vs. Soule, 74 Mich. 250, the question was whether a club " can distribute liquors among its members, *receiving pay for such liquors as they are distributed by the glass*, the proceeds to go into the treasury of the club to be used in purchasing other liquors or in paying expenses, without being liable under the laws of the State to pay a retail tax," and the court said: " It must be held that the liquors purchased and kept by the club were, before they were dealt out to the members, the property of the corporation.

" When the liquor was passed by the agent of the corporation— the respondent in this case—over to the individual member, it became his property, and was a sale to him, as he paid for it when it was delivered to him. He could then do with it as he pleased—drink it himself, give it to a friend to drink or throw it away. Being sold within the quantity prescribed by statute it was a sale by retail, and a corporation or its agent *making a business of it, the sale constituted the business of selling by retail.* The law includes all persons, and the places of sale prohibited, without the payment of the tax are not limited. It reaches a club house or a private house, as well as a saloon or a tavern. The object of the law is to tax the business when found or by whom carried on."

After examining and analyzing many decisions the court said:

" It appears to be a simple and unanswerable proposition that the liquor was, in the first place, owned by the corporation as corporate property, the same as any person might own it; that when it was delivered to a member of the corporation for money paid to the corporation or its agents, and going into the funds, it was a sale to that member the same as if it had been passed to a stranger to the corporation in the same way, and the liquor, by such sale, then becomes the absolute property of the member, the same as if he had purchased it in a saloon or in any other place where it is sold."

That opinion is particularly appropriate in this connection, because it not only presents in a clear light the liability of the club on the theory of its *proprietorship* of the liquors that were dealt in, but it distinctly holds that as the club *made a custom or business of such a traffic*, the sales of liquors constituted *the* business of selling by retail, as the law includes all persons and the places of sale are not limited.

In Chesapeake Club vs. State, 63 Md. 446, the question under consideration arose under a statute declaring it unlawful for any one " to sell directly or indirectly, at any place, or to keep or give away at his, her or their or its place of business, any spirituous, fermented or intoxicating liquors," and the plaintiff was a corporation organized for literary, musical and scientific purposes.

The question was one of violating the statute, by the club providing and keeping at its club rooms spirituous and fermented liquors, with the intent and for the purpose of supplying the same to its own members, as same might be called for or desired, either on checks or otherwise, as the association might provide.

On a full consideration of the question then raised, the court said:

" There, as we have seen, by the recital of the terms of the statute, the language is broad and comprehensive as could well be employed. In express terms, it applies as well to all corporations and associations, as to all persons; and the great object in view is the absolute prohibition of all dispensing of intoxicating drinks, *either by sale or gift*, except under special conditions not existing here.

" Intoxicating liquors can not be sold directly or indirectly, nor can they be given away *at the place of business* of the donor. The place, and *only place of business of the appellant is the club room*, where the liquors are kept and dispensed to the members of the club upon application.

" It is not pretended that the liquors were bought by any individual member of the club on his own account and kept by him. Nor by all the members of the club jointly, in their personal capacities. But the appellant, by its constitution and by-laws, has provided the ways and means by which to raise funds—that is, by entrance fees and by assessments, and these funds, when paid over, are the funds of the corporation in the hands of its treasurer. The liquors and other articles purchased for the benefit of the club with the funds thus raised are dealt out by a steward or janitor regularly appointed by the corporation, and who is its agent for that purpose. Therefore, whatever is done by him within the scope of his authority is the act of the corporation, and for which it is liable.

" This being the case, why is not the liquor thus supplied disposed of either by sale, or gift, according to the conditions of its delivery, to the particular member receiving it from the agent of the corporation?

" It is supposed that because the members are joined in an association for social and other purposes, no matter how numerous and indiscriminate their membership may be, that they may do, as among themselves, with entire impunity, what individuals in their relations and dealings with their fellow-members of the commuity may not do under the statute?

" But is there any substantial ground discoverable either in the letter or policy of the statute for any such distinction? The reason and good sense of the distinction is not perceived, and in view of the manifest object and policy of the statute such a distinction is wholly inadmissible. If the liquors, the property of the corporation, *be kept to be given* to *the members at the club room, it is a violation of the letter and spirit of the act;* and if it be sold to the member, either for money or for checks previously purchased, it is equally a violation of the law, for by its terms the statute declares that liquors shall not be sold, either directly or indirectly.

" The framers of the statute would seem to have been studious to avoid the possibility of allowing any combination, or contrivance whereby the objects of the law *could* be defeated. All means, whether direct or indirect, tending to defeat or evade the provisions of the act are prohibited; and to say that a corporation, or any association, whether formed for the particular object or otherwise, can, with entire impunity, *dispense liquors to its members* at pleasure, according to any artful device that may be adopted, would be simply to disregard not only the terms of the statute, but the manifest object to be effected by the Legislature."

It is quite true that that opinion was expressed by a divided court, but subsequently the same question was presented to and decided, in the same way, by a full bench and an unanimous court, in State vs. Easton Social Club, 73 Maryland, 97, and the principles announced in the preceding case were affirmed.

The answer of the defendant in that case was very much the same as that of the defendant in this, to the effect that the club was a corporation organized for the purpose of rational entertainment and amusement, and was not engaged in the transaction of any *business* whatsoever for the purpose of making a profit, directly or ndirectly, and that the income derived from various sources is solely applied to defraying the expense of the corporation—enumerating, much the same as in this case, as the various sources of its revenue, the entrance or admission fees of members, monthly dues, and the

money paid by members for what refreshments, liquors and cigars they obtained for their personal use at the club house.

The court stated the question to be "whether the furnishing of spirituous and fermented liquors by the steward or manager of the club to the members thereof, upon the payment of the prices fixed by the regulations of the corporation, constituted *sales* of such liquors, in violation of law?" and held that such a transaction constituted a sale, and, as such, was a violation of the statute; and asked this pertinent question, to-wit:

"And such being the case, why should this court be astute and indulge in questionable refinements in order to relieve these corporations of the just consequences of their acts?"

And then answered the question thus:

"By holding that the supply of liquor by the club to its members, in the manner admitted by the answers, does not constitute a sale * * * we should certainly afford impunity to gross violations of the spirit and intent of the statute, and thereby open the door to all the evils intended to be suppressed by it; and that done by simply allowing a combination of individuals to do what individuals without combination could not do without incurring the penalty of the law. We think the facts admitted in the answers clearly show habitual and constant violations of the law by these corporations by the sale of liquors at their club rooms to the members of the club; and the fact that the sales are made *without actual profit* to the corporation is wholly untenable, and affords no ground of defence to these proceedings."

This case and the one preceding cover every possible view that can be taken of the question under discussion, and fully support the views announced in our opinion; it matters not as to the *character of the disposition* of the liquor, whether sale or gift, it is equally amenable to the law and makes the defendant liable for license taxes. It is equally immaterial whether the disposition was profitable or unprofitable; or whether profit was contemplated by this course of dealing or not. This is the substantial claim of the State in this case as set out in her petition and as announced in our opinion. Hence the first ground of objection is not well taken.

## II.

We do not understand Art. 206 of the Constitution as imposing any *restriction* whatever in the matter of levying license taxes, but on

the contrary, as granting *permission* to the General Assembly in respect to them, for the language employed is, to-wit:

" The General Assembly *may levy a license tax, and in such case* shall graduate the amount of such tax to be collected from *the persons* pursuing *the several trades, professions, vocations and callings.*"

Then follows this declaration, viz. :

" *All persons, associations of persons and corporations* pursuing *any* trade, profession, *business or calling, may be rendered* liable to such tax," etc. Art. 206.

Looking into the license law of 1886 that was enacted in pursuance of the provisions of that article of the Constitution, we find its provisions to be, to-wit:

" That there is hereby levied an annual tax   *   *   *   upon each person or association of persons, or business firms and corporations, pursuing any trade, profession, vocation, calling or business, except those expressly exempt from such license tax by Arts. 206 and 207 of the Constitution." Sec. 1, Act 101 of 1886.

" That for every business of *bar room*, cabaret, coffee house, café, beer saloon, *liquor exchange, drinking saloon or other place where any-thing to be drunk or eaten on the premises is sold directly or indirectly*, the license shall be," etc.

After enumerating the nine different classes and grading them according to gross receipts, this proviso occurs, to-wit:

"No license shall be charged for selling refreshments for *charitable* or *religious* purposes;" and the further proviso, " that no *establishment selling or giving away, or otherwise disposing of any spirits, wine, alcoholic or malt liquors* in less quantities than one pint shall pay less than fifty ($50) dollars." Sec. 11, Id.

Sec. 1 of the license law of 1890 is couched in identically the same language as that of the license act of 1886. *Vide* Sec. 1 of Act 150 of 1890.

And Sec. 11 thereof is practically identical with Sec. 11 of the act of 1886. *Vide* Sec. 11, Id.

The terms of these licensing laws are almost identical with the language of the Constitution in respect to the persons, associations, and corporations pursuing the different trades, professions and vocations designated, though superadding "the business of bar room, liquor exchange, drinking saloon or other *place* where anything to be drunk or eaten on the premises is sold, directly or indirectly; " and

as if to emphasize and enforce the idea that was intended to be thereby conveyed, the proviso is made that "no license shall be charged for selling refreshments for charitable or religious purposes"—thus, by the plainest possible implication, excluding all other disposition of refreshments or liquors from the contemplation of the Legislature in framing these license statutes.

But if it be doubtful whether a sufficient grant of power is delegated to the General Assembly by Art. 206 of the Constitution for such a purpose, we have only to look into the provisions of Art. 170 to ascertain that "the regulation of the sale of alcoholic or spirituous liquors is declared a police regulation," and that "the General Assembly *may enact laws regulating their sale and use.*" Art. 170 of Constitution. And it is not perceived in what more appropriate way the General Assembly could *regulate* the disposition of alcoholic and spirituous liquors than by bringing the sale or other disposition of them under subje\ .on to the license laws. There can not be a doubt of our right to examine and contrast different articles of the Constitution *in pari materia*, in order to determine the scope and meaning of either; and applyn g this test, we think it evident that Art. 206 of the Constitution not only does not contain any *exclusion* of power to levy the license taxes that are imposed by the licensing acts, but that the grant of constitutional power is full and complete.

The argument of the learnea counsel for the defendants on this proposition is neither cogent nor persuasive, as will appear from the subjoined extract we have selected from one of their briefs, to-wit:

"The enumeration of powers to *levy license taxes on certain persons*, in Art. 206 of the Constitution, is an *exclusion of the power to levy such taxes on any other persons*. This is the rule laid down by Cooley in his Constitutional Limitations, p. *64, and which is cited with approval in La. Cotton M. Co. vs. New Orleans, 31 An., p. 444. And in that case ε. arge number of decisions of this court *are cited to the effect that where the General Assembly is authorized to exempt certain property, it may not exempt other property.* And see cases cited in Endlich on Stat., Sec. 533.

"*It follows*, that when Art. 206 confers *authority to levy* license taxes on persons, associations of persons and corporations pursuing any trade, profession, business or calling, *it by implication denies the*

*power* to impose license taxes on persons or corporations that do not pursue any trade, profession, business or calling—that is, on such corporations as you find these literary and social clubs to be. And see City vs. Telephone Co., 40 An. 42 (pp. 4 and 5)."

The requirement of the Constitution in reference to the *levy* of taxes is that "all property shall be taxed," and in reference to licenses, that "the General Assembly *may* levy a license tax * * on all persons, association of persons," etc.; but in respect to tax exemptions its language is that "the following property shall be exempt from taxation, and no other." Arts. 203, 206 and 207. From these constitutional precepts it is clear that the power to *levy* taxes is to be *liberally* construed, while *exemption* from taxation must be *strictly* construed.

This is the universal rule of interpretation. Hence the argument and authorities appertaining to tax exemptions are wholly inapplicable to the question under discussion.

### III.

While it is true that the Constitution provides that no law shall embrace more than one object, and requires that it shall be expressed in its title (Art. 29 of Constitution), and that in the title of the license laws drawn in question the only object expressed is the levy of a license tax—it pursues, however, the exact phraseology of the Constitution, and adds the guarded expression, to-wit: "*except* those who are expressly excepted from such license tax by Arts. 206 and 207 of the Constitution." It seems quite apparent that the conclusions we arrived at in the previous paragraph in regard to the constitutional grant of power to the General Assembly is equally applicable to the question presented here. For if it is permissible for us to examine and compare the provisions of Arts. 170 and 206 of the Constitution in order to ascertain the extent and scope of the grant of power to General Assembly to levy a license tax on the sale of liquor, we may with equal propriety examine and compare them with the provisions of Art. 29 of that instrument, in order to determine the constitutional legality of the titles of said licensing acts.

### IV.

It is argued that because the license laws under discussion do not contain any such specific provision as the law of 1871 did to the effect "*every club house* where spirituous liquors are used, sold or

supplied to members or visitors " (Sec. 3, Act 42 of 1871), should pay a license, therefore we must conclude that it was the legislative intention to exclude same therefrom; but we take it to be perfectly clear that the language employed in the licensing acts of 1886 and 1890 are equally as clear and strong as that of the act of 1871. For, although the term "every club house" is omitted, the phraseology employed, to-wit: "the business of bar room, liquor exchange, drinking saloon, *or other place where anything to be drank or eaten on the premises is sold, directly or indirectly*," is equally indicative of the legislative intention to include club houses. This is further strengthened and fortified by the terms of the proviso, which declares "that no *establishment* selling or giving away, or otherwise disposing of any spirits, wines, alcoholic or malt liquors," shall escape the payment of a license; and such a term certainly includes a club house.

### V.

While it is quite true, as contended by counsel, that the proviso to the eleventh section of the two licensing acts "merely fixes a minimum license which must be paid by every business establishment which either sells or gives away, or disposes of intoxicating liquors," and was "not intended to levy a license upon a class of persons upon whom licenses are not levied by the rest of the section," and that same must be read in connection with the remainder of the section; yet it is certainly competent to examine and construe the language employed in the provisos for the purpose of determining the proper interpretation to be given the entire act. And particularly is this true of the proviso that declares that "no license shall be charged for selling refreshments for *charitable or religious* purposes."

The construction of the provisos contended for has been, in effect, applied in the preceding argument.

In conclusion we feel constrained to say that after making a most careful examination of the law and evidence in this case, making a careful comparison of our original opinion with the averments and prayer of plaintiff's petition and with the opinions of many courts of other jurisdictions, and having carefully examined and compared the terms and phraseology of the licensing statutes with the precepts of the Constitution, we feel bound to adhere to the conclusions originally announced and refuse the application of the defendant.

Rehearing refused.

Mr. Justice Fenner recuses himself on the ground of interest.