STATE OF MAINE *vs.* JOHN G. LITTLEFIELD.

York. Opinion October 5, 1914.

*Goods in Stock. Interstate Commerce. Itinerant Vendor. License. Order for Goods. Sale. Wares and Merchandise.*

1. The words "in stock," as used in the Statute, means on hand for sale. The Statute means that whenever a stock of goods is moved into a town for the purpose of being put upon sale and sold in the town, the owner or person having them in possession for that purpose must obtain the license specified in Chap. 45 of Revised Statutes, before he engages in the business of selling them.

2. The soliciting of orders for goods to be shipped from another State, their shipment from another State to this State and the delivery of the goods to the persons who ordered them was interstate commerce, and the State cannot burden interstate commerce by compelling persons engaged in that commerce to pay a special tax for the privilege of engaging in such commerce.

3. In order to constitute a person a pedler, he must not only be an itinerant person, but must be engaged in vending or selling the articles mentioned in the prohibitory Statute as a business or occupation. It is not necessary that it should be his sole, or even his principal business, but it must be a considerable part of his occupation, business or vocation.

On report. Judgment for defendant.

This is a complaint and warrant against the defendant for conducting business as an itinerant vendor in the town of York, in the County of York, by selling goods, wares and merchandise at retail without a license, as required by Chap. 45 of Revised Statutes. At the conclusion of the evidence, the case was reported to the Law Court upon an agreed statement of facts, and it was stipulated that the report of the testimony is to be the agreed statement of facts upon which the Law Court is to render such judgment as the rights of the State and of the respondent require.

The case is stated in the opinion.

*Hiram Willard,* County Attorney, for the State.

*Cleaves, Waterhouse & Emery,* for respondent.

SITTING: SAVAGE, C. J., SPEAR, KING, HALEY, HANSON, PHILBROOK, JJ.

HALEY, J. This is a complaint and warrant against the defendant for conducting business as an itinerant vendor in the town of York in the County of York, by selling from a car, at retail, goods, wares and merchandise, without having procured the licenses required by Chap. 45 of the Revised Statutes, and is before this court upon report.

Section 1 of said chapter reads as follows:

"Every itinerant vendor who shall sell or expose for sale, at public or private sale, any goods, wares and merchandise without state and local licenses therefor, issued as hereinafter provided, shall be punished for each offense. . . . . ."

Sec. 15 of the same chapter defines the words "itinerant vendor" as follows:

"The words 'itinerant vendors' for the purposes of this chapter shall be construed to mean and include all persons, both principals and agents, who engage in a temporary or transient business in this state, either in one locality or in traveling from place to place selling goods, wares and merchandise, and who, for the purposes of carrying on such business, hire, lease or occupy any building or structure for the exhibition and sale of such goods, wares and merchandise, or who sell goods, wares and merchandise, at retail from a car, steamer or vessel."

The facts are undisputed, and it is agreed that the evidence may be considered an agreed statement of facts.

The defendant, at the time complained of, was a citizen of Wells, an adjoining town to the town of York, in the County of York, and was, and had been for a number of years, engaged in the grocery business at said Wells, and as a part of that business sold at retail and at wholesale flour, grain, sugar and feed. For a number of years prior to 1913 he had been selling flour, sugar and feed in carload lots to Mr. Plaisted, a merchant of York, but in the spring of 1913, Mr. Plaisted gave up the handling of those goods, and about six weeks prior to April first the defendant went to York, and solicited and took orders from residents of that town for grain, flour, sugar and feed, in quantities to load a freight car, with the understanding that defendant was to send the orders out of the State to be filled. The defend-

ant sent the orders out of the State for enough goods to fill the orders taken in York and other places and for his business at Wells, three or four carloads in all. The goods arrived at Kennebunk on the tracks of the Boston and Maine Railroad, and the defendant sorted out of the goods, those to fill the orders taken in York, placed them all in one car and forwarded them to York Village, some twelve to fifteen miles distant, by the Atlantic Shore Line Railway. The goods arrived at York Village on April third, and the defendant delivered from the car to the parties in York the goods ordered by them, and was paid the price agreed upon, the bills varying from fifty to one hundred and seventy dollars for each party, except that, as the goods did not arrive in York as early as expected, some of the parties who had given orders did not call for the goods, and those the defendant sold from the car, selling to one Ralph Merrill two 100 lb. bags of sugar, to Gilbert H. Martin two 100 lb. bags of sugar and one barrel of flour and two or three bags of grain, and to Charles Blake one 100 lb. bag of sugar. The State claims a conviction for two reasons.

First. The delivery from the freight car by the defendant of the goods ordered by the parties who received them, they having been ordered to be shipped from another State, and having been so shipped and delivered by the defendant.

Second. The sale and delivery to the three persons above named, who purchased the goods ordered by parties who did not call for them.

First. The acts of the defendant in soliciting orders for the goods, and delivering them from the car to the parties ordering them, were not unlawful. The facts upon this branch of the case are practically the same as in *Stewart* v. *Michigan*, decided by the U. S. Supreme Court, March 23, 1913, 232 U. S. Supreme, 665, in which case the defendant was convicted in the State court under a statute for doing without a license similar acts to the acts done by the defendant in this case, without a license, and it was held on a writ of error that the conviction was error. By the rules of law declared in that case, and in *Crenshaw* v. *Arkansas*, 227 U. S., 299, the acts of the defendant were not unlawful. The soliciting of orders for goods to be shipped from another State, their shipment from another State to this State, and the delivery of the goods to the persons who ordered them, was interstate commerce, and the State cannot burden interstate

commerce by compelling persons engaged in that commence to pay a special tax for the privilege of engaging in such commerce.

Second. Did the sale to the three persons above named of goods that had been ordered by other parties from the defendant to be shipped them from another State, which they did not receive by reason of not having called for them, render the defendant an itinerant vendor within the provisions of Chap. 45? The allegations of the complaint and warrant are, in substance, that the defendant did engage in a temporary or transient business in York, and did, for the purpose of carrying on such business, sell goods, etc., at retail from a car. The goods were sold from a car, and we must determine what the statute means by the words "temporary or transient business." Sec. 4 of said chapter provides that every itinerant vendor desiring to do business in this State shall make a deposit with the Secretary of State, and take out a State license. Sec. 6 provides that every application for a local license shall be signed by the holder of the accompanying State license, and shall specify the kind and line of goods then in stock in such town, with the name of the town in which said goods were last exposed or offered for sale. Such local license fee shall be computed and collected in each town, respectively, in which said goods shall be successively offered or exposed for sale.

The defendant had no line of goods in stock in the town of York. The words "in stock", as used in the statute, means on hand for sale. All the goods he had on hand in York had been bargained for and sold. They were in York for the purpose of delivery only. The statute means that whenever a stock of goods is moved into a town for the purpose of being put upon sale and sold in the town, the owner or person having them in possession for that purpose must obtain the licenses specified by chapter 45 before he engages in the business of selling them. The goods were not in stock for sale. They were not taken to York for sale, but were there to be delivered to the parties who had ordered them and for whom they had been shipped from another State, and the sale of them, when the persons on whose orders they had been shipped from another State, did not come for them, was a mere incident of the lawful business of the defendant; that is, the delivery of goods brought into the State by interstate commerce, and not the business of an itinerant vendor. "Business, in a legislative sense, is that which occupies the time, attention, the labor of men for the purposes of livelihood or for profit, a calling for

the purpose of a livelihood." *State* v. *Boston Club*, 45 La. Ann., 585, (20 L. R. A., 186). Webster: "Business; that which busies, or engages time, attention, or labor, as a principal serious concern or interest." "Business is the word that signifies and denotes the employment or occupation in which a person is engaged to procure a living." *Goddard* v. *Chafee*, 2 Allen, 395. "It is a synonym of employment, signifying that which occupies the time, attention and labor of men for the purposes of a livelihood or profit." *Martin* v. *State*, 59 Ala., 36.

In *Hay* v. *Commonwealth*, 107 Ky., 658, the respondent was prosecuted under a statute which prohibited all itinerant persons from vending various articles, and named among others goods, wares and merchandise. The defendant was a driver of an oil wagon owned by the Standard Oil Company, and the general agent of said company at Lexington had arranged with customers at Nicholsville to send an oil tank wagon to their places of business and to deliver them oil in wholesale quantities and at wholesale prices, fixed by said company from time to time; that said oil tank should come as often as was necessary to keep said customers supplied for their retail trade, and that the company sent its oil tanks regularly to Nicholsville for said purpose about every five days. The defendant sold and delivered to one Hendron, oil, who was not one of the regular customers of said company, and he also sold and delivered to one Klien, at the request of his clerk, who told defendant that his house sold oil; that said arrangement was made with said oil dealers in Nicholsville, because it was more convenient for them to get their oil in this way than to let it come from Lexington from time to time and have it shipped by rail. The above testimony was excluded and the court said: "We are clearly of opinion that the court erred in refusing to admit the testimony offered. Such testimony was competent, and, if believed by the jury, would have entitled the appellant to a verdict of not guilty, for the reason that, if true, it clearly showed that the defendant was not an itinerant person engaged in the selling of oil as a business or occupation. It would hardly be contended that a merchant of Nicholsville, having in charge a load of goods being hauled or shipped from Lexington to Nicholsville, might not on one occasion sell a few articles of goods on the road between the two points without violating the statute under consideration," and the judgment appealed from was reversed.

The court in the above case said: "It is undoubtedly true that, in order to constitute a person a peddler, he must not only be an itinerant person, but must be engaged in vending or selling the articles mentioned in the prohibitory statute as a business or occupation. It is not, however, necessary that it should be his sole business, or even his principal business, but it must, nevertheless, be a considerable part of his occupation, business or vocation."

The acts of the defendant upon this branch of the case, when judged by the above definitions and authorities, do not show that he was engaged in business as an itinerant vendor within the meaning of Chap. 45, R. S. Without deciding whether the sales were at retail or not, it is clear that the acts complained of do not show that he was engaged in the selling of the goods as a business, occupation or vocation, and the defendant is entitled to judgment, and the mandate must be,

*Judgment for defendant.*