STATE v. COUNTRY CLUB.    (No. 5430.)

(Court of Civil Appeals of Texas. Austin. Dec. 16, 1914. On Motion for Rehearing, Jan. 20, 1915.)

1. INTOXICATING LIQUORS ⟨⟩146—"SALE"— SOCIAL CLUB.

The dispensing of intoxicating liquors by an incorporated, bona fide social club to its members for a sum sufficient to pay the cost of the liquors and of maintaining the service is a "sale" of such liquors, and, if unlawful, cannot be held to be within the implied powers of the corporation.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 159, 160, 163; Dec. Dig. ⟨⟩146.

For other definitions, see Words and Phrases, First and Second Series, Sale.]

2. INTOXICATING LIQUORS ⟨⟩150 — SALE WITHOUT LICENSE—SINGLE SALE.

Pen. Code 1911, art. 611, prohibiting the sale of intoxicating liquors without taking out a license as a retail liquor dealer, when construed by giving the words their ordinary meaning, as required by articles 4 and 9, and also construed in the light of the evil sought to be suppressed and of the express exception from its provisions of wine growers, made by article 613, was intended to make unlawful a single sale by any one not licensed and not within the exception, even if not engaged in the business of selling.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 164, 165; Dec. Dig. ⟨⟩150.]

3. INTOXICATING LIQUORS ⟨⟩141 — SALE — PROFIT.

The fact that sales of liquor by a social club were not made for profit does not prevent the club from being engaged in the business of selling such liquors, since profit is not an essential element of engaging in such business.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 151; Dec. Dig. ⟨⟩141.]

4. INTOXICATING LIQUORS ⟨⟩141—ENGAGING IN BUSINESS—INCIDENTAL SALE.

Nor does the fact that the sales were merely incidental to the principal purpose of the club affect its being engaged in that business.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 151; Dec. Dig. ⟨⟩141.]

5. INTOXICATING LIQUORS ⟨⟩131 — SALE — INTENT.

The only intent necessary to constitute a violation of Pen. Code 1911, art. 611, prohibiting the sale of intoxicating liquors without a license, is an intent to do the prohibited act, though the seller believes in good faith that the sale is not prohibited by the statute.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 140, 161; Dec. Dig. ⟨⟩131.]

6. CORPORATIONS ⟨⟩438 — OWNERSHIP OF PROPERTY—TITLE OF MEMBERS.

Intoxicating liquors purchased by an incorporated club and held by it for sale to the members are not the common property of the members, but the sole property of the corporation as a legal entity.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1769–1771; Dec. Dig. ⟨⟩438.]

7. SALES ⟨⟩1—COMMON PROPERTY.

A transfer of common property to one of the owners in consideration of payment of the price into the common fund is a "sale," but a distribution of it among the common owners is not.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1, 3–5; Dec. Dig. ⟨⟩1.]

8. COURTS ⟨⟩89—RULES OF DECISION—CRIMINAL LAW.

The decisions of the Supreme Court and of the Court of Criminal Appeals on matters of criminal law are binding upon the Court of Civil Appeals.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 311, 312; Dec. Dig. ⟨⟩89.]

9. INTOXICATING LIQUORS ⟨⟩50—LICENSE— LIABILITY FOR TAX—INCORPORATED CLUB.

Since the law forbids the issuance of a retail liquor dealer's license to a corporation, the tax therefor cannot be collected from an incorporated social club which sells intoxicating liquors to its members.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 51; Dec. Dig. ⟨⟩50.]

10. TRIAL ⟨⟩53—ISSUES—IRRELEVANT EVIDENCE.

Evidence irrelevant to any issue, though admitted by agreement, cannot be considered in rendering judgment.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 124, 129; Dec. Dig. ⟨⟩53.]

11. COURTS ⟨⟩92—RULES OF DECISION—DICTUM—CERTIFIED QUESTIONS.

Where the Court of Civil Appeals certified to the Supreme Court, under the provisions of Rev. St. 1911, art. 1619, the question whether an injunction against the steward of an incorporated social club, which was engaged in selling intoxicating liquors as a business, was properly denied, a determination that a bona fide club, which sells such liquors to its members only, is not engaged in such business, was dictum.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 335; Dec. Dig. ⟨⟩92.]

12. STATUTES ⟨⟩225¾ — CONSTRUCTION — REENACTMENT.

The re-enactment of what is now Pen. Code 1911, art. 611, prohibiting any person not duly licensed from selling intoxicating liquors, after it had been decided that the statute of which it formed a part did not authorize the collection of a license tax from an incorporated club, indicated, under the rule that the Legislature, in re-enacting a statute which has been construed, adopts the construction placed thereon, rather that the Legislature intended to prohibit all sales by such clubs than that they were to be exempted from the prohibition.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 306; Dec. Dig. ⟨⟩225¾.]

13. INTOXICATING LIQUORS ⟨⟩50 — SALE WITHOUT LICENSE — STATUTE — INTENT — "PERSON."

The enacting of Pen. Code 1911, art. 611, providing that no person not duly licensed as a retail liquor dealer shall sell intoxicating liquor, followed by other articles exempting certain persons therefrom, is a more definite indication of the intent to include incorporated clubs with-

in the prohibition than if there had been an attempt to enumerate the prohibited classes, since the word "persons" includes corporations, and the mention of exempted persons excludes others from the exemption.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 51; Dec. Dig. ☞50.

For other definitions, see Words and Phrases, First and Second Series, Person.]

14. SUNDAY ☞4—PROHIBITED ACTS—LABOR.

A social club which sold intoxicating liquors generally to its members on Sunday violated Pen. Code 1911, art. 299, prohibiting any person from working or compelling his employés to work on Sunday.

[Ed. Note.—For other cases, see Sunday, Cent. Dig. § 4; Dec. Dig. ☞4.]

15. INTOXICATING LIQUORS ☞260—LICENSE —"FRANCHISE"—INJUNCTION.

A license to sell intoxicating liquors bestows upon the licensee a "franchise," which is a privilege conferred by law to pursue a calling or do an act or exercise a right which does not belong to the citizens of the country generally, since the right to sell such liquor by persons generally has been taken away by statute, and a social club may therefore be enjoined from making such sales on the ground of usurpation of a franchise.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 399; Dec. Dig. ☞260.

For other definitions, see Words and Phrases, First and Second Series, Franchise.]

16. INTOXICATING LIQUORS ☞6—CONTROL— POLICE POWER.

A sale of intoxicating liquor is subject to control under the police power of the state, and it may be either prohibited or permitted under such conditions as the Legislature shall impose.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 4; Dec. Dig. ☞6.]

17. LICENSES ☞17—OCCUPATION TAX—BILLIARD TABLES—"PLACE OF BUSINESS."

Rev. St. 1911, art. 7355, § 8, levying an occupation tax on every pool or billiard table used for profit, and providing that a table used in connection with any drinking saloon or other place of business where intoxicating liquors are sold or given away shall be regarded as used for profit, does not impose the tax on a bona fide incorporated social club, which maintains billiard tables in its clubhouse for the free use of its members and guests, since such clubhouse is not a saloon and, even though intoxicating liquors are sold therein, is not a "place of business," which in that statute means the place where one occupies his time and labor with a view of financial gain.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. §§ 42–46; Dec. Dig. ☞17.

For other definitions, see Words and Phrases, First and Second Series, Place of Business.]

18. LICENSES ☞17—OCCUPATION TAX—BILLIARD TABLES—CONSTRUCTION OF STATUTE.

That statute is a purely revenue statute, not one of regulation, like the provisions for licensing retail liquor dealers, and it cannot be inferred therefrom that it was the policy of the law to restrict the use of pool and billiard tables.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. §§ 42–46; Dec. Dig. ☞17.]

19. CORPORATIONS ☞374—POWERS—IMPLIED POWERS.

Under Rev. St. 1911, art. 1140, defining the legal powers of corporations, article 1164 restricting corporations to the objects of their incorporation or those permitted by law, and article 1167 prescribing penalties against a corporation which exceeds its authority, a corporation can exercise only such powers as are expressly granted or are necessary or reasonably appropriate to the exercise of its express powers.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1517, 1518; Dec. Dig. ☞374.]

20. CORPORATIONS ☞370—POWERS—IMPLIED POWERS.

A doubt as to the implied powers of a corporation must be resolved against the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1511–1518; Dec. Dig. ☞370.]

21. CORPORATIONS ☞370—IMPLIED POWERS —CLUB—SALE OF LIQUOR.

In view of the general policy of the law with reference to the liquor traffic, an incorporated social club, which is authorized by its charter to support and maintain a golf club and other innocent sports in connection therewith, has no implied power to dispense intoxicating liquors to its members, and may be enjoined from doing so, even if not prohibited by any criminal statute.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1511–1518; Dec. Dig. ☞370.]

Appeal from District Court, Travis County; Charles A. Wilcox, Judge.

Suit by the State of Texas to enjoin the Country Club from selling intoxicating liquors to its members, from selling liquors on Sundays and election days, from maintaining pool and billiard tables upon its premises, and from using its property for such purposes or any purpose other than maintaining a golf club. Decree granting injunction only against selling intoxicating liquor on election days, and the State appeals. Affirmed in so far as it granted the injunction and in so far as it refused the injunction against maintaining billiard and pool tables, and reversed in all other respects, and judgment rendered for the state.

B. F. Looney, Atty. Gen., and W. A. Kelling and C. M. Cureton, Asst. Attys. Gen., for the State. Thelbert Martin and Lightfoot, Brady & Robertson, all of Austin, for appellee.

## Statement of the Case.

JENKINS, J. This is a suit to enjoin the appellee: (1) From maintaining a buffet, and dispensing intoxicating liquors to its members. (2) From using its stock, means, assets, and property for such purpose. (3) From dispensing intoxicating liquors to its members on Sundays and on election days. (4) From maintaining and operating pool and billiard tables upon its premises, and from using its stock, means, assets, or other property for such purpose, or for any purpose other than maintaining a golf club.

## Findings of Fact.

We adopt as our findings of fact the following agreed statement of facts:

"It is agreed that the Country Club is a private corporation, duly and legally incorporated under the laws of the state of Texas, with its

place of business in the city of Austin, Travis county, Tex., and that Lewis Hancock is the president of said club.

"It is further agreed that the Country Club was duly and legally incorporated on or about the 11th day of February, A. D. 1907, as shown by the certified copy of its charter attached to plaintiff's petition.

"It is further agreed that the purpose for which said club was formed 'is to support and maintain a golf club, and other innocent sports in connection therewith.'

"It is further agreed that said corporation was organized in good faith, and that shortly after or about the time of its organization said corporation purchased a large tract of land in the city of Austin, and has erected thereon valuable improvements, consisting of a clubhouse, with furnishings, and a golf course; that said property, together with additional land purchased, and additional improvements made in recent years, is of the reasonable value of $35,-000; that said clubhouse and the said golf course, and other property and conveniences incident thereto, are used exclusively by the members of the club and their guests; that, in connection with the said clubhouse, the club uses a quantity of household, club, and kitchen furniture; that it has a library, consisting of quite a number of books, magazines, and periodicals; that it maintains in its clubhouse and about its grounds a steward and a corps of servants, maintains a café for the service of meals, if called for by, and only by, its members, and for the sole use of themselves and their invited guests; that said club also maintains, and has for many years maintained, a buffet on its premises, for the purpose of selling and dispensing intoxicating liquors to its members only, and for the purpose of dispensing intoxicating liquors to its invited guests; that in the maintenance of the said buffet it has from time to time expended large sums of money for the purchase of intoxicating liquors, and paying its servants and agents for serving and dispensing the same, in connection with their other duties; that said club has sold its intoxicating liquors to its members only, not for the purpose of making a profit, but for the purpose of realizing a sufficient amount thereof above the cost price thereof to pay for the maintenance and service of said buffet, and to pay the cost of said liquors; that it maintains said buffet, and daily sells intoxicating liquors to its members only at reasonable hours, not only on week days, but also upon Sundays and election days; that the sale and dispensing of liquors by said club to the extent and in the manner aforesaid has not been and is not by way of trade or business, and is conducted under strict rules and regulations, and under the supervision of the board of directors and a house committee, and such liquors are not sold or dispensed to minors or students.

"It is further agreed that said club was incorporated in good faith for the purposes mentioned in its charter, and was not incorporated, and is not being maintained as a device or scheme to evade the payment of any tax to the state of Texas, the county of Travis, or the city of Austin, nor is it a scheme or device to evade any of the license or liquor laws of the state of Texas, or of any subdivision or municipality thereof; that the sale of liquor to its members and the dispensing of same to its members and guests has been merely incidental to its lawful corporate purposes and for the enjoyment and convenience of such members and guests.

"It is further agreed that said club has also invested its funds in two pool and billiard tables, which it keeps, maintains, and operates in its clubrooms for the use of its members and the invited guests of the club, who are permitted to use and play, on the same without any cost or charge, other than the admission fees or dues paid by such members to the club; but the privilege of using said pool and billiard tables is denied to minors.

"It is further agreed that the said club has not heretofore, nor has it at this time, taken out and paid any liquor dealers' license, or license to operate said pool and billiard tables, but has at all times dispensed and sold its intoxicating liquors as aforesaid, without having taken out any liquor dealers' license under the laws of the state, or qualified as a retail dealer, and has at all times maintained and operated said pool and billiard tables without paying any taxes or license fees for so doing to the state, to the county, or to the city; that it has constantly sold and is now selling and dispensing its intoxicating liquors in the manner and to the extent as aforesaid, in quantities of one gallon or less, to be drunk on its premises by members and invited guests, and its members have constantly and are now buying said intoxicating liquors from said club in quantities of one gallon or less and drinking the same on its premises; that the maintenance and operation of said pool and billiard tables has not been by way of business or for profit, but purely as an incident of the corporate purposes named in its charter.

"It is further agreed that while the said club has not paid any license fees or taxes to the state, county, or city for the privilege of selling and dispensing liquors in the manner aforesaid, or for keeping and maintaining said pool and billiard tables, it has not done so because it believes that it was not liable to pay license fees or taxes for exercising these privileges, and because defendant has been and is now advised by counsel that it is not liable for such license fees and taxes.

"It is further agreed that the premises of defendant upon which is situated its clubhouse, containing said buffet and said pool and billiard tables, is not within local option territory, nor situated where the sale of intoxicating liquors is forbidden by any law, state or municipal, nor where the keeping and operating of billiard and pool tables is prohibited; that the defendant has placed its clubrooms under the control of a house committee, consisting of one member, whose duty, under the rules, is to see that the club is closed every night at 11 o'clock; that the admission fee of members is $25, and that the annual dues are $24 for each male member and $16 for each lady member, and that applicants for membership must have their names posted for two weeks before being voted upon, and one negative vote in the board of directors, or the written protest of seven members of the club, rejects the applicant; that the privileges of the club are extended to guests under strict rules and regulations, and under the control of the directors and house committee; that the said club has been continuously operated and conducted with a view solely to furnishing its members and their invited guests facilities for playing the game of golf, which is a game played only in the daytime, and the playing of which is attended with fatigue, making it beneficial as a form of exercise, as well as amusing from the skill required in playing it. The fatigue resulting from the playing of this game induces appetite and thirst, and the provisions and liquors furnished by the club to its members are only incidental to the playing of the game, and the library and other reading matter supplied are so supplied for the same purpose, and that the same is true also of the pool and billiard tables maintained by the club; that is, to serve the comfort of players while waiting an opportunity to play, or resting from the fatigue incident to golf, or for the convenience and pleasure of those who prefer to play pool and billiards.

"It is further agreed that while the said club has dispensed and is dispensing intoxicating liquors to its members and guests on Sundays and

election days, and has on said days operated said pool and billiard tables, as well as on other days of the week, it has done so in the belief, on the part of the management, that it was neither illegal nor beyond its corporate power so to do, and the sale and dispensing of liquors on Sundays, and the use of said pool and billiard tables, has been limited to members and guests only, and in the same strict and limited manner as the sale and dispensing of same on other days is done, and also purely as an incident to its charter purposes, and without any intention of evading or violating any law, civil or criminal, of the state or city; that the sale and dispensing of liquors as aforesaid, by defendant, and the use of said pool and billiard tables on Sundays and election days, bear the same relation to the convenience, comfort, and pleasure of its members and guests as such conduct upon any other day, and for the same reasons only; and that during all of its seven years' existence it has been known by the officers of the state, county, and city, who are charged with the collection of such taxes, that said club was dispensing and selling liquors to its members, and were maintaining said billiard and pool tables without paying said taxes, and that they have never demanded the payment of same, nor up to this time questioned the right of the said corporation to so sell and dispense intoxicating liquors to its members and invited guests without profit, and in the manner it has and is now doing, nor have they questioned its right to keep and maintain said billiard and pool tables for the convenience of its members and invited guests."

The court rendered judgment for appellant, enjoining the appellee from dispensing liquor to its members on election days, but, as to all the other issues, rendered judgment for appellee, from which judgment the appellant gave notice of appeal, and, having perfected its appeal to this court, now prosecutes the same.

### Opinion.

The issue in this case is as to whether the appellee had implied authority, under its charter, to do all or any of the things sought to be enjoined herein.

The first question is as to whether such acts or any of them constitute a violation of the criminal laws of this state. If so, to that extent the injunction should be granted, for it could not reasonably be contended that a charter grants a corporation the right to violate the criminal laws. To so hold would be to say that it has the right to commit a wrong.

[1] It is alleged by appellant that the appellee has sold, and that it is engaged in the business of selling, intoxicating liquors in violation of law. That the transactions shown by the agreed facts are sales is well settled in this state, as well as by the weight of authority elsewhere.

In Krnavek v. State, 38 Tex. Cr. R. 44, 41 S. W. 612, Hurt, P. J., speaking for the court, said:

"The question here is whether the sale of intoxicants by the managing steward or barkeeper of the club to one of the members of said club is a sale. We are of opinion that it is. When the intoxicants were bought by the steward, or any other member of the club, with the funds of the club, they became the property of the corporation, and a sale by the steward of said corporation to any of its members was a sale, as that term is defined. It was the separation of the property of the club, and the transfer to an individual member, for which he either paid the cash or became responsible therefor."

To the same effect is the language of Mr. Justice Henderson in Feige v. State, 49 Tex. Cr. R. 513, 95 S. W. 506.

Mr. Justice Davidson, in Finn v. State, 41 S. W. 1102, said:

"There is no question but that a sale by this corporation [a social club] to one of its members is a sale, within the definition of that term."

To the same effect is the decision in Duke v. State, 104 Tex. 355, 137 S. W. 654, opinion by Mr. Justice Ramsey; and Adams v. State, 145 S. W. 940, opinion by Mr. Justice Harper.

Without reference to whether or not such sales are inhibited when made by a social club without license, the overwhelming weight of authority is that they are sales.

[2] Article 611 of the Penal Code reads as follows:

"No person shall, directly or indirectly, sell spirituous or vinous liquors, capable of producing intoxication, in quantities of one gallon or less, without taking out a license as a retail liquor dealer. Any person who shall violate the provisions of this article shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be punished by a fine of not less than five hundred dollars nor more than one thousand dollars, and by imprisonment in the county jail for a term not to exceed six months."

Did appellee, in making sales of intoxicating liquors without license, violate said law? It certainly did, if the language used therein be given its ordinary meaning, as is required by articles 4 and 9 of the Penal Code. In view of the fact that this state, and every other state in the Union, has treated the liquor traffic, if not as an outlaw, at least as a suspect whom it was necessary to put under bonds, as it were, for its good behavior, we think that the Legislature, in enacting said article, intended to absolutely forbid a single sale of intoxicating liquor by any one who had not previously taken out a license so to do, except as otherwise specially provided. The act in which this article was enacted excepted from its provisions, under certain limitations, wine growers. Acts 1st Called Sess. 31st Leg. p. 294; P. C. art. 613. This calls for the application of another rule of construction, viz., the inclusion of one is the exclusion of all others.

There is still another rule that should be given consideration, and that is that we should look to the evil intended to be suppressed. This act does not apply to a licensed retail liquor dealer. He is sufficiently hedged about by bonds upon which he is civilly liable, and penalties for which he is specifically made liable, including the forfeiture of his license. Article 611 was not necessary in order to prevent any one from following the business of a retail liquor dealer without license. There was already a law specifically punishing such offense. Article 411, P. C.

1905, which was repealed by the act above referred to, leaving such a person subject only to the penalty prescribed in article 130, P. C., which has been upon the statute book for many years. Though the law was ample to punish the licensed liquor dealer who violated any of its provisions applicable to his business, and to punish any one who pursued the occupation or followed the business of selling intoxicating liquor at retail without first procuring a license therefor, such business being taxable by law, there was no provision made prior to the enactment of the above act for the punishment of one who made one or more sales of intoxicating liquors without having previously taken out license as a retail liquor dealer, where such sales were not sufficiently numerous or frequent to amount to pursuing the business of retailing intoxicating liquors. To supply the deficiency in the law, and to suppress this evil, it seems clear to us was the purpose of the Legislature in enacting said article 611. The word "person," as used in article 611, is a generic term, and includes corporations. This is not disputed by appellee.

It is not contended by appellee that, because it cannot obtain a license as a retail liquor dealer, therefore it may lawfully pursue such business without a license. If this was so, a female or a person under 21 years of age, or one who within the past five years has been guilty of violating the liquor laws of this state, might likewise lawfully pursue such business, for none of these can obtain a license as a retail liquor dealer in this state. The contention of appellee is that it is not pursuing the business of a retail liquor dealer. As we have seen, pursuing the business of retailing liquor without license is not eo nomini an offense in this state. The offense denounced in article 611 is committed, as we think, when a single sale is made, without having first taken out a license as a retail liquor dealer. But the Court of Criminal Appeals, in Cassidy v. State, 58 Tex. Cr. R. 454, 126 S. W. 600, held otherwise. In that case the defendant was charged with making a single sale of a pint of whisky, without having obtained a license as a retail liquor dealer. The evidence sustained the charge. The court said:

"We are of the opinion that the evidence does not show that appellant violated section 4 of the act of the Thirty-First Legislature [article 611 of the Penal Code of 1911]. There is nothing to intimate that he made but one sale. * * * There is nothing else to indicate that appellant was engaged in the business of selling spirituous liquors which were intoxicating. * * * One sale of this character would not constitute appellant a retail liquor dealer carrying on a business of that sort under the provisions of the act of the Thirty-First Legislature."

Certainly not, because "a retail liquor dealer," as defined by that act, is one who has obtained a license to sell intoxicating liquors. Section 2, Gen. Laws, p. 294. There are a number of things which by said act are made unlawful for a retail liquor dealer to do. For instance, to keep open his place of business after 12 o'clock at night, or on Sunday, or on election days, or to sell to a minor, etc. The court said:

"It will be noted that appellant was not charged with a violation of the Sunday law or with any provision of the retail liquor dealers' license law."

But he was charged with making a sale of intoxicating liquor without first taking out a license as required by said law, which, as we have seen, is made penal, under section 4 of said act. The penalty for violating section 4 of the act (P. C. 611) is a "fine of not less than $500 nor more than $1,000, and by imprisonment in the county jail for a term not to exceed six months." The penalty for violating any of the provisions of the act *by a retail liquor dealer* is by a fine "not less than $25 nor more than $200, or by imprisonment in the county jail for not longer than thirty days, or both such fine and imprisonment." Section 24, p. 308. From this it is made plainly to appear that to make a sale of intoxicating liquors without first taking out a license as a retail liquor dealer is a different offense from that of violating some provision of the law pertaining to such dealers. We think that the honorable Court of Criminal Appeals was misled as to the offense charged in the Cassidy Case, supra, by the use of the words "selling spirituous, vinous or malt liquors," in section 1 of said act. This section levies a tax on such business, and the word "selling," as there used, means engaged in the business or occupation of selling. A person who made only one sale would not be subject to such tax, but this does not argue that he might not, in so doing, violate some other provision of said act. As above indicated, we think that making a single sale without license violates section 4 of said act. P. C. art. 611.

But, if we are in error in this conclusion, it does not follow that appellee has not violated said article 611 as construed by the Court of Criminal Appeals in the Cassidy Case, supra. There the defendant was held guiltless by reason of the fact that he had made but one sale. In the instant case it appears that appellee made many sales.

[3] As to the contention that appellee was not engaged in the business of selling liquor in quantities less than one gallon, for the reason that it did not sell for profit, and that such was not its principal business, but was only incidental to its main purpose, to wit, maintaining grounds, a clubroom, and other things pertaining to the game of golf, and other innocent sports, we do not think that the definition given to business, occupation, or calling, to the effect that thereby is meant one's principal occupation, or a business pursued for profit, or for the purpose of obtaining a livelihood, is applicable to the instant case, but that it should be held to include the doing of those things which are usually done by those engaged in

selling liquor at retail, without regard to whether or not that is appellee's principal business, or that liquors are sold without profit. "Profit is not a necessary ingredient of a sale." State v. Neis, 108 N. C. 787, 13 S. E. 225, 12 L. R. A. 413. "The fact that the sales were made without actual profit to the corporation is wholly immaterial." State v. S. L. M. Club, 73 Md. 97, 20 Atl. 783, 10 L. R. A. 66; State v. Boston Club, 45 La. Ann. 585, 12 South. 895, 20 L. R. A. 191. It cannot be doubted that a saloon keeper who sold liquors at cost, without paying the tax levied on such occupation, would be just as guilty of pursuing an occupation taxable by law, as one who sold at 100 per cent. profit under like circumstances.

[4] As to retailing liquors not being appellee's principal business, "a person who carries on, in connection with some other employment, a business which is a violation of the law is just as guilty as he who carries on such business alone." Mohrman v. State, 105 Ga. 712, 32 S. E. 144, 43 L. R. A. 400, 70 Am. St. Rep. 77. "The fact that the main purpose * * * was social pleasure * * * can make no difference." 105 Ga. 711, 32 S. E. 143, 43 L. R. A. 399, 70 Am. St. Rep. 76.

If the business of selling cigars was taxable, and a barber should sell cigars in his place of business, not once only, but many times, without paying the occupation tax as a cigar dealer, he would be guilty of violating article 130, P. C., though his income from his cigar business might not be 10 per cent. of his receipts from his barber business, and this would be true, even though he sold cigars at cost. In no text-book, and in no decision, so far as we are aware, has "profit" been stated to be one of the elements of a sale. Nor do we know of any case where it was shown that a person was following an occupation taxable by law, without paying such tax, that he was exempt from the provisions of the law because the business was not his principal business. True, it has been held that social clubs were not included in the provision of occupation tax or license laws, not for the reason that such business was not pursued for profit, or as their principal business, but because, not being pursued for profit, or as their principal business, such business was not pursued by them at all. We think this reason fallacious. To be engaged in a business is to do the acts constituting such business. What is the business of selling liquor at retail? It is selling liquor at retail, not necessarily for profit, or as one's principal business, but *selling liquor*. This the appellee did daily for a long period of time, and will continue to do, unless restrained by judgment of court.

The definition of a business, as contended by appellee, would be correct in some cases, as, for instance, where homestead was the issue. Waggener v. Haskell, 89 Tex. 435, 35 S. W. 1; or in a case involving the collection of an occupation tax, where the things constituting the business were done only occasionally; or as in the case of Love v. State, 31 Tex. Cr. R. 469, 20 S. W. 978, where the occupation tax was levied upon those "who travel for the purpose of vending medicine," and not upon selling medicine, and the evidence showed that the defendant was a missionary, who traveled for the purpose of preaching the gospel, and that, while traveling for this purpose, he had incidentally sold three bottles of oil, supposed to be efficacious in the cure of rheumatism; or as in the case of Cohen v. State, 53 Tex. Cr. R. 422, 110 S. W. 67, where the defendant was charged with pursuing the business and occupation of keeping and storing liquors for others in prohibition territory, and where the defense was that defendant was engaged in the cold drink business, and that he had not engaged in the business of keeping and storing liquors for others, but that only occasionally and incidentally he had permitted others, for accommodation and without pay, to deposit their bottles of whisky in his ice box, kept by him as a necessary adjunct to his cold drink business, and for that purpose only. We cannot think that a proper definition of business, as applied to such cases, is restrictive and exclusive of all others. By way of illustration: Suppose in the Love Case, supra, the defendant had been peddling dry goods, and at the same time had been peddling medicine, and that his sales of dry goods amounted to ten times as much as his sales of medicine. His principal business would have been traveling for the purpose of selling dry goods, but he would also have been engaged in the business of traveling for the purpose of vending medicine. Or in the Cohen Case, supra, if it had been shown that he solicited the business of keeping and storing intoxicating liquors for others, and that he did so keep and store such liquors, it would have been immaterial that selling cold drinks was his principal business, and that storing liquors for others was only incidental to his principal business, in the sense that he had already prepared his ice box for his cold drink business, and that storing liquors for others involved no additional expense or labor. If he in fact had been engaged in the business of keeping and storing liquors for others, it would have been immaterial that he made no charges therefor, but that the same was done to obtain increased patronage for his cold drink business.

It is clear to our minds that appellee has been guilty of violating article 611 in that it has sold "spirituous and vinous liquors, capable of producing intoxication, in quantities of one gallon or less, without taking out a license as a retail liquor dealer." It is well settled in this state, as appears from the decisions hereinbefore referred to, that the distribution of liquors by the steward of a bona fide club to its members only for a price paid

by such members is a sale. The question here is not, as it was in the Cassidy Case, supra, of one sale, but of many, daily and continuously made for a long period of time.

[5] That the law is as we have stated it as to what constitutes a sale has never been controverted, so far as we are aware, except on the theory that bona fide clubs are not within the purview of laws regulating or prohibiting the sale of liquors. Such is the contention of the appellee in the instant case. This contention might be urged with some plausibility if a criminal intent was necessary to constitute a violation of such laws. It may fairly be presumed that the members of all bona fide social clubs are what the members of the appellee club are shown to be, and what many of them are personally known to the members of this court to be, viz., gentlemen of high moral standing, who would not intentionally violate any penal law of the state. But in this, as in most other instances of malum prohibitum, the question is, was the forbidden act intentionally done? and not with what intent was it done.

The contention of appellee has been upheld by the decisions of several states. Commonwealth v. Smith, 2 Pa. Super. Ct. 474; Cuzner v. Club, 155 Cal. 303, 100 Pac. 868, 20 L. R. A. (N. S.) 1095; Barden v. Club, 10 Mont. 330, 25 Pac. 1042, 11 L. R. A. 595, 24 Am. St. Rep. 27; Klein v. Livingston, 177 Pa. 224, 35 Atl. 606, 34 L. R. A. 94, 5 Am. St. Rep. 717; Club v. McMaster, 35 S. C. 1, 14 S. E. 290, 24 Am. St. Rep. 826; Club v. Dwyer, 11 Lea (Tenn.) 452, 47 Am. Rep. 298; Moriarty v. State, 122 Tenn. 440, 124 S. W. 1016, 25 L. R. A. (N. S.) 1252; Club v. Commonwealth, 87 Va. 540, 12 S. E. 963. Such was also the holding in the case of Seim v. State, 55 Md. 566, 39 Am. Rep. 419; but it was held otherwise in the later case of State v. Club, 73 Md. 97, 20 Atl. 783, 10 L. R. A. 64. And it was so held in New York in People v. Club, 149 N. Y. 5, 43 N. E. 410, 31 L. R. A. 510, 52 Am. St. Rep. 700, and in Missouri in State v. Club, 125 Mo. 308, 28 S. W. 604, 26 L. R. A. 573. But the New York cases were overruled in People v. Sinell, 58 Hun, 607, 12 N. Y. Supp. 40, and People v. Andrews, 115 N. Y. 427, 22 N. E. 358, 6 L. R. A. 128, and in People v. Luhrs, 7 Misc. Rep. 503, 28 N. Y. Supp. 499, and the Missouri case was overruled in the later case of State v. Athletic Club (Mo.) 170 S. W. 904, by the Supreme Court of Missouri, not yet officially reported. The weight of authority, however, is against appellee's contention. Martin v. State, 59 Ala. 34; Club v. State, 148 Ala. 643, 42 South. 1040, 121 Am. St. Rep. 84; State v. Lockyear, 95 N. C. 633, 59 Am. Rep. 287; State v. Neis, 108 N. C. 787, 13 S. E. 225, 12 L. R. A. 412; Mohrman v. State, 105 Ga. 709, 32 S. E. 143, 43 L. R. A. 398, 70 Am. St. Rep. 74; People v. Club, 203 Ill. 127, 67 N. E. 855, 62 L. R. A. 884; Club v. People, 228 Ill. 75, 81 N. E. 805, 12 L. R. A. (N. S.) 519, 119 Am. St. Rep. 417, 10 Ann.

Cas. 383; State v. Shumate, 44 W. Va. 490, 29 S. E. 1001; State v. Club, 45 La. Ann. 585, 12 South. 895, 20 L. R. A. 186; People v. Soule, 74 Mich. 250, 41 N. W. 908, 2 L. R. A. 494; Manning v. Canon City, 45 Colo. 571, 101 Pac. 978, 23 L. R. A. (N. S.) 192; James v. State, 124 Ga. 72, 52 S. E. 295; Marmont v. State, 48 Ind. 21; Club v. State, 69 Miss. 218, 10 South. 574; Club v. Woodburn, 60 Or. 341, 119 Pac. 339; Club v. City of Louisville, 92 Ky. 309, 17 S. W. 743; State v. Club, 106 Minn. 515, 119 N. W. 496, 20 L. R. A. (N. S.) 1101; State v. Horacek, 41 Kan. 87, 21 Pac. 204, 3 L. R. A. 687; Club v. State, 63 Md. 446; and the cases from Maryland, New York, and the late Missouri case above cited.

[6] A number of the cases above cited, holding that social clubs are exempt from the operation of liquor laws, rest upon the proposition that liquor bought with corporate funds is not the property of the corporation, but is the common property of the members of the club, and that the delivery of certain quantities of the same to members, receiving from them the price thereof and reinvesting the money so received in other liquors, is not a sale, but only an equitable distribution among the members of that which was already theirs. With all due respect to the eminent courts so holding, we unhesitatingly say that such a theory is not even plausible. Every tyro in the law knows that the property of a corporation does not belong to its stockholders, but to the legal entity known as the corporation. Upon dissolution of a corporation, the stockholders would become owners in common of its property, in proportion to the stock owned by them.

[7] But even the transfer of the title of property owned by tenants in common to one of them, in consideration of his paying into the common fund the price of the same, is a sale.

Of course, if the property really belongs to a number of persons in common, a partition of the same among them is not a sale. It was upon the assumption of ownership in common that Commonwealth v. Smith, 102 Mass. 144, and Commonwealth v. Pomphret, 137 Mass. 564, 50 Am. Rep. 340, were decided. But such was not the case in the instant case. The liquors were purchased with the funds of the club, and were the property of the club, and were sold to the members as they would have been sold to strangers, if strangers had been permitted to obtain them from the club.

[8] But it is contended by appellee that it has been held by the Supreme Court of this state, and by the Court of Criminal Appeals, which is our Supreme Court in the domain of criminal law, that, although the transactions of appellee were sales to its members, they do not constitute a violation of the criminal laws of Texas. If it has been so decided by said courts, we feel constrained to follow such decisions, however erroneous we may deem them to be. The cases referred to are Adams v.

State, 145 S. W. 940, and State v. Duke, 104 Tex. 355, 137 S. W. 654, 138 S. W. 385; State v. Austin Club, 89 Tex. 20, 33 S. W. 113, 30 L. R. A. 500; and Koenig v. State, 33 Tex. Cr. R. 367, 26 S. W. 835, 47 Am. St. Rep. 35.

In the Koenig Case, supra, the defendant was indicted for violating the following provisions of the Penal Code:

Article 355 now (548): "If any person shall play at any game of cards at any house for retailing spiritious liquors, storehouse, tavern, inn, or any other public house, or in any street, highway or other public place, * . * * he shall be fined," etc.

The only point involved in that case was whether the Turnverein clubroom in Cuero, at which it was admitted the defendant played, to which none but members and their invited guests residing outside of Cuero were admitted, and where liquors were sold to members only, without profit, was "a house for retailing spirituous liquors," *within the meaning of said article.* It was held that it was not, and we think correctly so. Hurt, P. J., speaking for the court, said:

"Reference to the statute shows that the places and houses named, and those intended to be embraced, are all 'public.' The statute contemplates public houses and public places. Was the clubroom of the association either? None but members and their guests could enter there and share its privileges. So long as this rule was enforced, it was not public, and the evidence shows that the rule was strictly observed. We conclude that the evidence does not show that defendant played cards at a house for retailing spirituous liquors, within the meaning of the statute."

Not that the clubroom was not a place where liquors were sold at retail, but that it was not such a house "within the meaning of the statute." What statute? Not the statute regulating the sale of intoxicating liquors, and declaring who might lawfully sell such liquors, and who was forbidden to do so, but a statute declaring under what circumstances card playing became unlawful. The statute did not make it unlawful per se to play cards; neither was betting at a game of cards prohibited. Such playing was declared unlawful only when played at certain places. It will be noted that, after the words "house for retailing spirituous liquors," "storehouses, taverns and inns" are mentioned, and then is added "or any *other public* house," and after enumerating "streets and highways" is added "or *other public* place." (Italics ours.) When this article was enacted (1840), saloons and storehouses were the "houses for retailing spirituous liquors." When we consider the evil attempted to be suppressed was playing cards in public places, we must infer, as decided in Koenig v. State, that social clubrooms, then unknown in this state, were not intended to be included in said statute. And this is all that was decided or could have been decided in the Koenig Case, for no other issue was before the court.

It is true that Judge Hurt, in writing the opinion in the Koenig Case, quoted from Seim v. State, 55 Md. 566, 39 Am. Rep. 419,

which cited and approved Graf v. Evans (England), and from Club v. Commonwealth (Va.), Club v. McMaster (S. C.), Club v. Dwyer (Tenn.) and Borden v. Club (Mont.) supra, wherein it was held that dispensing liquors by the steward of a bona fide club, to members of such club only, and receiving therefor the price of such liquor, to be placed in the funds of the club, and used in buying other liquors, was not a sale. But this point was not involved in the Koenig Case, and Judge Hurt expressly repudiated this doctrine when the point was presented in the subsequent case of Krnavek v. State, supra, an excerpt from which is set out in a previous portion of this opinion. This illustrates the wisdom of the rule that dicta is not to be considered as authority, and is not binding, and should not influence even the judge who wrote it.

Not only is the doctrine that such transactions do not constitute a sale repudiated by the great weight of authority, but the able counsel for appellee recognize that the contrary doctrine is established in this state. We quote from their brief herein as follows:

"We also freely concede that the Texas cases, civil and criminal, establish the rule that the dispensing of liquors by the method here proposed makes each transfer of liquors from the club to members a sale. We have no complaint to make against this doctrine."

[9] In the Austin Club Case, supra, the only issue was as to whether the state was entitled to a license tax from the club for pursuing the occupation of a retail liquor dealer. It was held that under the law then in force the club could not have obtained such license. It cannot be doubted that this conclusion was correct. Such being the case, it necessarily followed that the state could not collect money for a license which it would not and could not have issued, had payment therefor been tendered in advance. The question as to whether the club had violated the law in pursuing the business of selling liquor without having first paid the occupation tax was not in issue. The unlawful pursuit of a business was not and is not taxable under the laws of this state.

In the Krnavek Case, supra, the appellant, in support of his contention that the sale of beer by the steward of a club to its members was not unlawful, cited Koenig v. State, supra; Winters v. State, 33 Tex. Cr. R. 393, 26 S. W. 839; Grant v. State, 33 Tex. Cr. R. 527, 27 S. W. 127; and State v. Austin Club, supra. Hurt, P. J., speaking for the court, said:

"The authorities referred to are not in point as to this case. The question in the Austin Club Case was whether or not the business was taxable as an occupation, and the question in the cases decided by this court was whether or not the parties indicted were playing cards at a place for retailing spiritous liquors; the same being a public place, under the statute."

Thus, as we have in effect stated in a previous portion of this opinion, the question in the Koenig Case was not whether liquors

were sold at retail, either lawfully or unlawfully, but whether or not the private rooms of a club, where liquors were sold to members only, was a public place; and the question in the Austin Club Case was whether the state could collect for a license which it could not issue.

In the Adams ·Case, supra, Mr. Associate Justice Harper, speaking for the court, said:

"The questions presented for our consideration are but two: (1) Did the transaction constitute a sale within the meaning of our laws? (2) And if it constituted a sale, was appellant, or the club for whom he was acting, liable to pay the tax levied upon those engaged in selling intoxicating liquors?"

The first question was answered in the affirmative, the second in the negative; and we think both answers are correct. The first for the reason that such transaction was a sale, as shown by the authorities hereinbefore cited. The second for the reason that the state, having forbidden the issuance of a retail liquor dealer's license to a corporation, cannot collect a license tax from a corporation pursuing such business. State v. Austin Club, supra.

[10] The first question, as above stated, was involved in the Adams Case, for the reason that appellee was being prosecuted by information for having made a sale of beer. The second question was not involved in the case, for the reason that neither the defendant nor the club for which he was acting was sought to be held liable "to pay the tax levied upon those engaged in selling intoxicating liquors." No charge of any kind was made in the information against the club. Adams was not charged with being engaged in the business of selling intoxicating liquors, but only with having made one sale of such liquors. It is true that the agreed statement of facts shows that appellant acted in the transaction as the steward of a club, and also the nature of said club. This was material on the issue of sale or no sale. That the club had not taken out a license as a retail liquor dealer was material upon the issue of the criminality of such sale. But that the defendant or the club was or was not engaged in the business of selling intoxicating liquors was wholly immaterial to any issue in the case. Evidence, though admitted without objection or by agreement, if it be immaterial and irrelevant to any issue in the case, cannot be considered in rendering judgment therein.

It is evident from reading the opinion in the Adams Case, supra, that the court was influenced to make the statements therein contained by what it supposed was decided in the Duke Case, supra. That was a suit brought by the state to enjoin the defendant, the president of the Dallas Golf and Country Club, and other officials or employés of said club, from keeping a disorderly house. The prosecution was under article 359 of the Penal Code, as amended by the Thirty-First Legislature (now article 496) of chapter 4,

tit. 10, relating to "offenses against public morals," which reads as follows:

"A 'bawdyhouse' is one kept for prostitution or where prostitutes are permitted to resort or reside for the purpose of plying their vocation. A 'disorderly house' is any assignation house, or any theater, playhouse or house where spirituous, vinous or malt liquors are kept for sale, and prostitutes, lewd women, or women of bad reputation for chastity are employed, kept in service or permitted to display or conduct themselves in a lewd, lascivous or indecent manner, or to which persons resort for the purpose of smoking or in any manner using opium, or any house in which spirituous, vinous or malt liquors are sold or kept for sale, without first having obtained a license under the laws of this state to retail such liquors. * * * An 'assignation house' is a house, room or place where men and women meet by mutual appointment, or by appointment made by another for the purpose of sexual intercourse, whether at such place vinous, spirituous or malt liquors are kept for sale or used or not."

[11] The case was presented to the court on certified questions. The jurisdiction of the Supreme Court in such cases is conferred by article 1619, R. S., which reads as follows:

"Whenever, in any case pending before the Court of Civil Appeals, there should arise an issue of law which said court should deem it advisable to present to the Supreme Court for adjudication, it shall be the duty of the presiding judge of said court to certify the very question to be decided by the Supreme Court," etc.

By "the very question" is not meant an abstract question which may determine the issue as presented in the Court of Civil Appeals, "but the issue itself as there presented." Railway Co. v. Zantzinger, 92 Tex. 365, 48 S. W. 363, 44 L. R. A. 553, 71 Am. St. Rep. 859. "When questions of law are referred by the Court of Civil Appeals directly to this [the Supreme] court for determination in the first instance, we have no power to pass upon any questions, except those submitted." Darnell v. Lyon, 85 Tex. 473, 22 S. W. 960.

Keeping these rules of law in mind, we are enabled, by referring to the questions certified in the Duke Case, to determine what was decided therein, and what, if anything, therein stated is dicta. Only two questions were certified, as follows:

"Question 1: It not appearing that the defendants, or either of them, had been engaged in the business of selling intoxicating liquors, was the injunction properly denied?

"Question 2: If the writ of injunction was not properly denied on the ground that it did not appear that the defendants were engaged in selling intoxicating liquors as a business, then was the dispensing of intoxicating liquors to the members of the Dallas Golf and Country Club in the manner and for the consideration shown by the facts stated, a sale of such liquors, within the meaning of article 359 of the act of the Thirtieth Legislature, approved April 18, 1907 (Laws of 1907, p. 246)?"

Much of the lengthy opinion in the case is devoted to the discussion of the question whether a bona fide club that makes a practice of selling intoxicating liquors to its members, and to no one else, is "engaged in the business of selling intoxicating liquors."

This was not a question submitted to the court. The Court of Civil Appeals, in question No. 1, states as a fact that the defendants were *not* "engaged in the business of selling intoxicating liquors"; and, whatever deduction may properly be drawn from the agreed facts, the Supreme Court, in answering the question propounded, was bound by the facts stated in the certified questions by the Court of Civil Appeals. The Supreme Court was not requested to pass upon the correctness of such finding of fact. The question propounded was: Such being the fact, "was the injunction properly denied"?

Question 2: "Was the dispensing of intoxicating liquors to the members of the Dallas Golf and Country Club, in the manner and for the consideration shown by the facts stated, a sale of such liquors, within the meaning of article 359?" etc. This question also assumes as a fact that the club was not "engaged in selling intoxicating. liquors as a business."

None of the numerous decisions cited and quoted in the Duke Case are in point upon the issues submitted by the certified questions therein, except the Koenig Case, the reasoning in which might, by analogy, have been applied to the case before the court. In the Koenig Case the court arrived at the conclusion that, although spirituous liquors were sold in the clubroom, the Legislature did not intend to include such place in the law with reference to playing cards, for the reason that it was not a "public" place. This is made plain by the language used in the subsequent case of Krnavek v. State, supra, the opinion in which was written by the same learned judge who wrote the opinion in the Koenig Case. And so it might have been held in the Duke Case, in view of the immoral character of the houses mentioned in the statute as "disorderly houses," that the Legislature did not intend to include in said term the private clubrooms of good citizens and gentlemen of eminent respectability. Indeed, in view of the certified questions submitted by the Court of Civil Appeals, and of the facts shown by the agreed statement, it must be held that this, and nothing but this, was decided in that case, and that all else contained in said opinion is dicta. Grigsby v. Reib, 105 Tex. 602.[1] Under the certified questions hereinbefore set out, nothing could have been decided in denying the injunction, as was therein done, except that the clubrooms of the Dallas Golf and Country Club was not a disorderly house, within the meaning of the statute on that subject, notwithstanding the fact that spirituous and vinous liquors were there "sold and kept for sale"; it being admitted that the club was not engaged in the business of retailing liquors.

We have already reviewed the Koenig Case and the Austin Club Case, which are relied upon in the Duke Case. That the learned judge who wrote the opinion in the Duke Case was mistaken in supposing that the Austin Club Case was an authority in the matter which he had under consideration appears from the following excerpt from said opinion: "The facts in that case [the Austin Club Case] were practically identical with the case at bar." True, but the legal questions involved were altogether different. In the former case the issue was whether, in a civil suit, the state was entitled to collect a license fee from a defendant to whom no license would or could have been issued; in the latter case the issue was whether the defendant was guilty of keeping a disorderly house, within the meaning of the statute on that subject.

[12] In both the Adams Case and the Duke Case, supra, reference is made to the rule of construction that, when the Legislature re-enacts a statute which has been construed by the courts, the presumption is that it intended that the new enactment shall receive the same construction as the old. Cargill v. Kountze, 86 Tex. 386, 22 S. W. 1015, 25 S. W. 13, 24 L. R. A. 183, 40 Am. St. Rep. 853; Ennis v. Crump, 6 Tex. 34. This is sought to be applied by reason of the decisions in Koenig v. State and State v. Austin Club, supra. We recognize the force of the rule, and would follow it in the instant case, if it was applicable to the facts herein. In the Koenig Case the statute construed was with reference to playing cards. In the Austin Club Case the statute construed was with reference to the liability of a chartered social club to pay the tax levied upon retail liquor dealers. Inasmuch as the statutes upon both of these subjects have been re-enacted since those decisions were rendered, and the language with reference to card playing has not been changed and clubs have not been permitted to take out license as retail liquor dealers, we would hold, if the question was presented to us, as was held in those cases. No such question is here presented. The argument is that inasmuch as. the present liquor law was enacted many years after it was held in the Austin Club Case that social clubs could not be licensed as retail liquor dealers, and as it must have been known to the Legislature that many such clubs were selling intoxicating liquors to their members, and as they are not prohibited eo nomini from so doing, the Legislature must have intended that they should continue so to do. We think that it might with more force be argued thus: The Legislature knew that it had been held under a former law that a social club could not obtain a license as a retail liquor dealer. It did not, in re-enacting the liquor law, provide that they could, but, on the contrary, made it plain that they could not. It knew that social clubs were indulging in this practice and desired to put a stop to it, and, to accomplish this, enacted article 611, forbidding such sales by any one who had not qualified as a retail liquor dealer.

[13] If it be asked why did not the Legisla-

[1] 153 S. W. 1124.

ture specially mention social clubs as being prohibited, if such was the intention, the answer might be that if the Legislature had undertaken to name the persons prohibited from selling intoxicating liquors without license, and had accidentally omitted to mention some person whom it would have named, but for such accidental omission such person might have made such sale with impunity, under the well-known rule of construction that the inclusion of one is the exclusion of all others. When the Legislature said "no person" shall sell, its language was broad enough to include every person, corporations as well as natural persons; and if it had intended to exempt social clubs, knowing that it had prevented them from obtaining such license, the presumption is that it would have so said. It would seem that article 611 was enacted, in part, in view of the decision in the Austin Club Case. It is the usual and the only safe method, where an act is intended to embrace all but a few, to first enact a sweeping clause, which includes everybody, and then, by proviso or subsequent articles, to name those who are intended to be exempted. Such was the method adopted in this instance, as witness the sweeping clause "no person," and the subsequent exception of wine growers.

We conclude that the issues involved in the instant case and discussed in the preceding portion of this opinion have never been decided in this state. We find, under the agreed statement of facts herein, that appellee has been guilty of making sales of intoxicating liquors in violation of article 611 of the Penal Code of this state, and that in so doing it has abused its corporate powers and franchises.

[14] It is also alleged that appellee violated article 299 of the Penal Code in that it labored and obliged its employés to labor on Sunday. The evidence relied on to sustain this allegation is that it dispensed intoxicating liquors on Sundays the same as on week days. We think that the evidence sustains the allegation. Ex parte Axsom, 63 Tex. Cr. R. 627, 141 S. W. 793, 40 L. R. A. (N. S.) 179, Ann. Cas. 1913D, 794; McCain v. State, 2 Ga. App. 389, 58 S. E. 550; Cortesy v. New México, 6 N. M. 682, 30 Pac. 947, 19 L. R. A. 352. These cases so fully discuss Sunday laws and the construction that they should receive that we deem it unnecessary to do more than refer to them. In this connection we call attention to the fact, that so far as violating the Sunday law is concerned, it is immaterial whether the appellee does or does not violate the law in making sales of liquors on other days of the week. All labor, except as otherwise provided in the statute, is forbidden on Sunday. While one or two sales may not constitute labor, as was held in Benson v. State, 47 Tex. Cr. R. 609, 85 S. W. 800, we think that such sales made through the en-

tire day does constitute labor, within the meaning of the statute.

The trial court enjoined appellee from selling intoxicating liquors on election days. No complaint is made of the judgment in this respect, and we are in accord with the trial court as to this part of its judgment.

[15] We think that appellee should be enjoined from selling liquors to its members upon the further ground that such sale is a franchise to be enjoyed only by those to whom such privilege is granted by the laws of this state. A franchise has been defined many times by the courts in this country and in England in language variant, but in meaning substantially the same as applicable to the particular cases under consideration. These definitions are, in substance, that a franchise is a privilege conferred by law upon an individual or association or corporation to pursue a calling or do an act or exercise a right, which does not belong to the citizens of the country generally, and which, without such grant or permission or license, they could not do without violating the criminal or civil law, or public policy of the state. It is no less a franchise if the thing to be done was one which might lawfully have been done under the common law, without permission from the government, if the state, in the proper exercise of its police power, has forbidden the thing to be done by any person or under any circumstances, except by the persons or classes named and under the circumstances indicated in the statute.

[16] That the sale of intoxicating liquor is a proper subject of control, under the police powers of the state, and that the state may, in the exercise of such power, prohibit such sales absolutely, or under any conditions except those named in the statute, is too well settled to require the citation of authority. That the state of Texas has done this is evident from a reading of our laws with reference to the sale of liquors in this state. Those laws absolutely prohibit such sales in local option territory, and in all portions of this state in certain localities, on certain days and to certain persons, and by all persons except those who have first taken out license as retail liquor dealers. Only persons of certain classes can obtain such license, and they only, upon certain conditions. The license, when thus granted, may be revoked for certain causes, and the party, whose license has thus been revoked, cannot again obtain such a license within a given period. Such being our laws upon this subject, it cannot be doubted that the common-law privilege of selling intoxicating liquor has been entirely taken away, and that it is the purpose of our laws on that subject that no one shall be allowed to make such sales, except those who have been licensed to do so. Appellee has not obtained such license; it has done none

of the things rendered by the statute prerequisite to obtaining the same, and does not belong to the class of persons who could obtain such license. If, by reason of the peculiar wording of our penal statutes, or under the rule requiring that the same be strictly construed, it should be held that appellee was not subject to punishment under such statutes, nevertheless, it appearing that it has usurped a franchise, the courts have power to restrain it by injunction from further so doing.

[17] It is shown by the agreed statement of facts herein that appellee has in its clubrooms a billiard table and a pool table, for playing upon which no charge is made. The state seeks to enjoin the use of these tables in this manner, for the reason that no occupation tax is paid thereon. Section 8, art. 7355, R. S., levies an occupation tax "from every billiard or pool table, or anything of the kind used for profit, $20; any such table used in connection with any drinking saloon or other place of business where intoxicating liquors, cigars or other things of value are sold or given away, or upon which any money or other thing of value is paid, shall be regarded as used for profit." Although liquors are sold in appellee's clubroom, it is not a "saloon," as that term is ordinarily understood, and in the sense that the Legislature evidently used it in the article above set out. Neither do we think that it is a "place of business," as that term is used in said article. If a business is forbidden or is taxable by law, it is immaterial whether it be pursued for profit or pleasure. Keeping a billiard or pool table is not taxable, unless it is "used for profit." The profit may be indirect, as where it is used to attract persons to one's "place of business." We think that by "some other place of business," as here used in connection with "saloon," is meant what is ordinarily understood by such expression, viz., a place where one occupies his time and labor, with a view of financial gain. Liquor, or other things of value, may be given away with financial profit to the owner, as where it is done to attract patronage to some other profitable business; and we think that it was to prevent such evasions as this that the words following "saloon" were added in the article above set out. The appellee is not engaged in business for profit of any kind, and hence could not derive profit, either directly or indirectly, from the free use of its billiard and pool tables by its members and their invited guests.

[18] In construing article 611 of the Penal Code, we referred to the rule that the words of a statute are to be taken in their ordinary meaning. But no rule should be stressed too far. "The letter killeth, but the spirit maketh alive"; and hence, where a literal construction would lead to a seeming injustice, we should look to the policy of the law. It is the evident policy of our laws where the same do not absolutely prohibit, to greatly limit the sale of intoxicating liquors, on account of the bad physical and moral effects of the use of such liquors. But we know of nothing from which it could be inferred that it was the policy of our law to prohibit or limit the use of billiard or pool tables. They may, without impropriety, be kept in private residences, and playing upon them is as innocent an amusement as is the game of golf, to maintain which is the specific purpose of appellee's charter, and may properly be included under the clause "other innocent sports." The only purpose of the statute above set out was to obtain revenue from such tables where they were used for profit.

As stated in the first part of this opinion, the general issue involved herein is as to the implied powers of appellee under its charter. We have disposed of this issue, in so far as it involves the doing of those things which are a violation of the penal laws of this state. But the issue still remains: If none of the things which appellee has been accustomed to do are violations of the penal law, has it the implied authority, under its charter, to maintain a buffet, invest its funds in intoxicating liquors, and employ a steward to dispense them to its members in the manner shown by the agreed statement of facts herein?

[19, 20] The subject of the implied powers of corporations has been a fruitful source of litigation, and a review of a number of the leading decisions thereon would be pertinent here, and perhaps interesting, but the length which this opinion has already unavoidably obtained forbids our entering into a detailed discussion of this subject. After a careful reading of many cases, we have selected the following excerpt from the opinion in Railway Co. v. Worthington, 88 Tex. 562, 30 S. W. 1055, 53 Am. St. Rep. 778, as being a fair statement of the general rule on this subject:

"Corporations are the creatures of the law, and they can only exercise such powers as are granted by the law of their creation. An express grant, however, is not necessary. In every express grant there is implied power to do whatever is necessary or reasonably appropriate to the exercise of the authority expressly conferred."

To which may be added: In case of doubt arising from the language used in the charter, or the nature of the business claimed to be within the implied powers of the charter, or the express enactments or general policy of the state with reference to the power or privilege claimed to be incident to the express powers of the corporation, the doubt should be resolved against the corporation. R. S. arts. 1164, 1167, 1140; Tram Co. v. Bancroft, 16 Tex. Civ. App. 170, 40 S. W. 839; Rue v. Railway Co., 74 Tex. 479, 8 S. W. 533, 15 Am. St. Rep. 852; Railway Co. v. Rosedale, 68 Tex. 176, 4 S. W. 534; Wharf Co. v. Railway Co., 81 Tex. 501, 17 S. W. 57; Fertilizing Co. v. Hyde Park, 97 U. S. (7

Otto) 659, 24 L. Ed. 1038; People v. Palace Car Co., 175 Ill. 124, 51 N. E. 664, 64 L. R. A. 366; People v. Gas Co., 130 Ill. 268, 22 N. E. 798, 8 L. R. A. 497, 17 Am. St. Rep. 319.

[21] Applying these general rules to the facts in the instant case, in view of the general policy of the laws of this state in reference to the liquor traffic, we do not think that dispensing intoxicating liquors to its members is one of the implied powers of appellee under its charter "to support and maintain a golf club and other innocent sports in connection therewith."

For the reasons stated in this opinion, the judgment of the trial court is affirmed, in so far as it enjoined appellee from selling intoxicating liquors on election days, and in so far as it held that appellee was not liable to pay an occupation tax on its billiard and pool tables; and said judgment is in all other respects reversed and here rendered for appellant, and appellee is perpetually enjoined from investing any portion of its funds in intoxicating liquors, and from dispensing such liquors to its members.

Affirmed in part, and in part reversed and rendered.

KEY, C. J., not sitting.

## On Motion for Rehearing.

The following is an excerpt from appellee's motion for a rehearing:

"This court erred in holding that appellee violated article 611 of the Penal Code, because in so doing it overruled the decisions of the Court of Criminal Appeals of this state in the following cases, to wit: Koenig v. State, 33 Tex. Cr. R. 357, 26 S. W. 835, 47 Am. St. Rep. 35; Cassidy v. State, 58 Tex. Cr. 454, 126 S. W. 600; Adams v. State, 145 S. W. 940."

Not for the purpose of arguing the case with learned counsel, but to make our view of the cases referred to clear, we call attention to the fact that in the Koenig Case no one was charged with selling liquor, either legally or illegally, but Koenig was charged with illegally playing cards. His guilt did not depend on the fact that he had played cards, but upon the place where the same was played, which Judge Hurt said must be a public place. Whether the sale of liquors by the club made such place public, within the meaning of the statute, depended upon whether it was engaged in such sale by way of trade; that is, in selling to the public. The Cassidy Case was decided on the proposition that making one sale only did not violate article 611. In the instant case many sales were made. In the Adams Case but a single sale was charged in the information, though it was alleged that such sale was "then and there" made to two persons.

It is also insisted that we have overruled the decision of the Supreme Court in the Austin Club Case in that it was held in that case that the club "was not engaged in the business of selling intoxicating liquors, within the meaning of said statute." What stat-

ute? The statute granting a license to retail liquor dealers, and not a statute punishing illegal sales of intoxicating liquors. The court held that retail liquor license could not be issued to the club because, among other reasons, it was not engaged in the sale of liquors by way of trade; that is to say, to the public, in an "open house." The decision of the court was that the state could not collect a license fee from the Austin Club. Suppose there had been a statute specifically making it an offense for a social club to sell intoxicating liquor, would the decision in the Austin Club Case have been different? Certainly not. The state having excluded social clubs from the list of those who could obtain a retail liquor dealer's license, it could not collect such license fee from a club that sold intoxicating liquors, whether such sales were legal or illegal. This was all that was or could have been decided in the Austin Club Case. The motion for rehearing is overruled.

Motion overruled.